15-56045

———————————————————————————

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

———————————————————————————

DOUGLAS JORDAN-BENEL,

Plaintiff and Appellee,

v.

UNIVERSAL CITY STUDIOS LLC; BLUMHOUSE PRODUCTIONS, LLC;
OVERLORD PRODUCTIONS, LLC; PLATINUM DUNES PRODUCTIONS;
WHY NOT PRODUCTIONS, INC.; and JAMES DEMONACO,

Defendants and Appellants.

———————————————————————————

On Appeal from the United States District Court
for the Central District of California
The Honorable Michael W. Fitzgerald
Case No. 2:14-cv-05577-MWF-MRW

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

## APPELLANTS' OPENING BRIEF

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

KELLI L. SAGER (SBN 120162)
    kellisager@dwt.com
KAREN A. HENRY (SBN 229707)
    karenhenry@dwt.com
JASON HARROW (SBN 308560)
    jasonharrow@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 S. Figueroa Street, Suite 2400
Los Angeles, California 90017-2566
Telephone: (213) 633-6800
Facsimile: (213) 633-6899

Attorneys for Defendants/Appellants
UNIVERSAL CITY STUDIOS LLC, BLUMHOUSE
PRODUCTIONS, LLC, OVERLORD PRODUCTIONS,
LLC, PLATINUM DUNES PRODUCTIONS, WHY
NOT PRODUCTIONS, INC., and JAMES
DEMONACO

# CORPORATE DISCLOSURE STATEMENT

Defendants Universal City Studios LLC ("Universal"), Blumhouse Productions, LLC ("Blumhouse"), Overlord Productions, LLC ("Overlord"), Platinum Dunes Productions ("Platinum Dunes"), and Why Not Productions, Inc. ("WNP"), nongovernmental corporate parties, provide the following statement to comply with Federal Rule of Appellate Procedure 26.1:

Universal is an indirect subsidiary of NBCUniversal Media, LLC. NBCUniversal Media, LLC is indirectly owned by Comcast Corporation, which is publicly held. No other publicly held corporation owns 10% or more of NBCUniversal Media, LLC.

Blumhouse has no parent corporation or any publicly held corporation owning 10% or more of its shares.

Overlord is a limited liability company owned by Blumhouse Productions, LLC and Blumhouse Entertainment, Inc.

Platinum Dunes has no parent corporation or any publicly held corporation owning 10% or more of its shares.

//

//

1

Why Not is a wholly owned subsidiary of Why Not Productions, S.A.

DATED this 13th day of April, 2016.

DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER
KAREN A. HENRY
JASON S. HARROW

By          *s/ Kelli L. Sager*
                    Kelli L. Sager

Attorneys for Defendants and Appellants
UNIVERSAL CITY STUDIOS LLC,
BLUMHOUSE PRODUCTIONS, LLC,
OVERLORD PRODUCTIONS, LLC,
PLATINUM DUNES PRODUCTIONS,
WHY NOT PRODUCTIONS, INC. and
JAMES DEMONACO

# TABLE OF CONTENTS

Page

1. SUMMARY OF ARGUMENT ...................................................................1

2. JURISDICTION ......................................................................................4

3. ISSUES PRESENTED ............................................................................5

4. STATEMENT OF THE CASE .................................................................6

5. STATEMENT OF FACTS ........................................................................6

    A.    Plaintiff's Lawsuit. ..............................................................................6

    B.    The Film Defendants' Dispositive Motions. .........................................8

        1.    The SLAPP Motion..............................................................8

        2.    The 12(b)(6) Motion. .............................................................10

    C.    The Court's June 24 Order. ....................................................................10

6. STANDARD OF REVIEW. ......................................................................12

7. THE DISTRICT COURT ERRED IN REFUSING TO APPLY THE
    SLAPP STATUTE TO CLAIMS ARISING FROM THE
    CREATION, PRODUCTION, AND DISSEMINATION OF FILMS
    ABOUT MATTERS OF PUBLIC INTEREST. ...........................................14

    A.    Section 425.16 Must Be Interpreted Broadly.......................................15

    B.    The District Court Should Have Found That Plaintiff's State
        Law Claims Arise From Conduct In Furtherance Of The Film
        Defendants' Rights Of Free Speech. ....................................................18

        1.    Plaintiff's State Law Claims Against The Film
            Defendants Arise From Protected Conduct. .............................18

        2.    Plaintiff Cannot Evade The SLAPP Statute By
            Couching His Claims As An Alleged "Breach Of
            Contract." ................................................................................20

i

3. The Alleged Pre-Publication Conduct Falls Within The Scope Of The SLAPP Statute. ...........................................25

4. The District Court's Rationale Improperly Conflated The Two Distinct Parts Of The SLAPP Analysis. ...................................................................27

C. The Speech At Issue Involved A Matter Of Public Interest. .............30

8. PLAINTIFF CANNOT ESTABLISH A PROBABILITY OF PREVAILING ON HIS CONTRACT OR DECLARATORY RELIEF CLAIMS. ..................................................................................33

A. This Court Can And Should Decide In The First Instance Whether Plaintiff Demonstrated A Probability Of Success On The Merits. .........................................................................34

B. Plaintiff's Implied Contract Claim Fails Because He Has Not Alleged Facts Sufficient To Establish Access To His Screenplay. ..................................................................36

1. Access Is An Essential Element Of An Implied Contract Claim. ..........................................................36

2. Alleging Bare Corporate Receipt Does Not Infer Access. ....................................................................39

C. Plaintiff's "Implied Contract" Claim Independently Fails Because He Failed To Establish Contractual Privity. .........................45

1. Plaintiff Did Not Allege Privity With DeMonaco Or WNP. .....................................................................47

2. Allowing A Talent Agency's Receipt Of A Screenplay To Bind All Of The Agency's Clients To An Implied Contract Defies Well-Settled Agency Law. ...........................................................51

3. Plaintiff Failed To Adequately Allege Other Elements Required For An Implied-In-Fact Contract. ...................................................................54

D.    The Film Defendants' SLAPP Motion Should Have Been
      Granted As To Plaintiff's Declaratory Relief Claim. .........................57

9.    CONCLUSION....................................................................................................58

# TABLE OF AUTHORITIES

Page

## Cases

Alexander v. AETN, LLC,
  2011 U.S. Dist. LEXIS 99913 (E.D. Cal. Sept. 2, 2011) ...................................19

Aliotti v. R. Dakin & Co.,
  831 F.2d 898 (9th Cir. 1987) ........................................................................55, 57

Armeni v. America's Wholesale Lender,
  2012 WL 1570112 (C.D. Cal. May 2, 2012)......................................................42

Aronson v. Dog Eat Dog Films, Inc.,
  738 F.Supp.2d 1104 (W.D. Wash. 2010) ...........................................................20

Ashcroft v. Iqbal,
  556 U.S. 662 (2009)....................................................................................passim

Batzel v. Smith,
  333 F.3d 1018 (9th Cir. 2003) .............................................................................4

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007)....................................................................................passim

Benay v. Warner Bros. Entm't, Inc.,
  607 F.3d 620 (9th Cir. 2010) .............................................................................47

Briggs v. Eden Counsel For Hope & Opp.,
  19 Cal.4th 1106 (1999) ......................................................................................15

Buchanan v. Neighbors Van Lines,
  2010 WL 4916644 (C.D. Cal. Nov. 29, 2010) .............................................51, 53

Canyon View Estates v. FDIC,
  472 F.App'x 493 (9th Cir. Mar. 19, 2012) .........................................................13

Chandler v. Roach,
  156 Cal.App.2d 435 (1957) ...............................................................................47

iv

Church of Scientology v. Wollersheim,
    42 Cal.App.4th 628 (1996) ...................................................................16

City of Cotati v. Cashman,
    29 Cal.4th 69 (2002) ...........................................................................18

Clegg v. Cult Awareness Network,
    18 F.3d 752 (9th Cir. 1994) .................................................................42

Club Members for an Honest Election v. Sierra Club,
    45 Cal.4th 309 (2008) ...................................................................14, 58

ComputerXpress, Inc. v. Jackson,
    93 Cal.App.4th 993 (2001) ..................................................................34

Cross v. Cooper,
    197 Cal.App.4th 357 (2011) ................................................................30

D'Arrigo Bros. of Cal. v. United Farmworkers of America,
    224 Cal.App.4th 790 (2014) ................................................................22

DC Comics v. Pacific Pictures Corp.,
    706 F.3d 1009 (9th Cir. 2013) ...............................................................4

Desny v. Wilder,
    46 Cal.2d 715 (1956) ...................................................................*passim*

Dillon v. NBCUniversal Media LLC,
    2013 WL 3581938 (C.D. Cal. June 18, 2013)....................................53

Doe v. Gangland Prods.,
    730 F.3d 946 (9th Cir. 2013) ........................................................*passim*

Donahue v. Ziv Television Programs, Inc.,
    245 Cal.App.2d 593 (1966) .................................................................49

DuPont Merck v. Superior Court,
    78 Cal.App.4th 562 (2000) ..................................................................28

Dyer v. Childress,
    147 Cal.App.4th 1273 (2007) ..............................................................31

Equilon Enterprises v. Consumer Cause, Inc.,
    29 Cal.4th 53 (2002) ...............................................................16, 17, 35

Faris v. Enberg,
    97 Cal.App.3d 309 (1979) .................................................................*passim*

Feldman v. 1100 Park Lane Associates,
    160 Cal.App.4th 1467 (2008) ......................................................22, 23

Ferguson v. NBC,
    584 F.2d 111 (5th Cir. 1978) ...............................................................44

Fintland v. Luxury Marine Group LLC,
    2010 U.S. Dist. LEXIS 24959 (C.D. Cal. March 1, 2010)..................17

Fox Searchlight v. Paladino,
    89 Cal.App.4th 294 (2001) ..................................................................28

Gable v. NBC,
    727 F.Supp.2d 815 (C.D. Cal. 2010) .............................................*passim*

Governor Gray Davis Committee v. American Taxpayers Alliance,
    102 Cal.App.4th 449 (2002) ................................................................28

Graham-Sult v. Clainos,
    756 F.3d 724 (9th Cir. 2014) ...............................................................13

Greater Los Angeles Agency on Deafness, Inc. v. Cable News
    Network, Inc. ("GLAAD"),
    742 F.3d 414 (9th Cir. 2014) ................................................28, 30, 34

Hall v. Time Warner,
    153 Cal.App.4th 1337 (2007) ..............................................................26

Harik v. California Teachers Ass'n,
    326 F.3d 1042 (9th Cir. 2003) .............................................................30

Herzog v. Castle Rock Entm't,
    193 F.3d 1241 (11th Cir. 1999) ...........................................................44

Hickey v. Capital Cities/ABC, Inc.,
    792 F.Supp. 1195 (D. Or. 1992), aff'd, 999 F.2d 543 (9th Cir.
    1993) ...................................................................................................34

vi

Hill v. Gaylord Entm't,
  2008 WL 783756 (S.D. Fla. March 20, 2008)................................................37, 43

Hilton v. Hallmark Cards,
  599 F.3d 894 (9th Cir. 2010) ................................................................16, 19, 31

Hunter v. CBS Broadcasting, Inc.,
  221 Cal.App.4th 1510 (2013) ................................................................27, 30

Hupp v. Freedom Comm'ns, Inc.,
  221 Cal.App.4th 398 (2013) ................................................................22

Imageline, Inc. v. CafePress.com, Inc.,
  2011 WL 1322525 (C.D. Cal. Apr. 6, 2011) ................................................53

Ingels v. Westwood One Broadcasting,
  129 Cal.App.4th 1050 (2005) ................................................................31

J.L. v. Children's Inst., Inc.,
  177 Cal.App.4th 388 (2009) ................................................................53

Jarrow Formulas, Inc. v. LaMarche,
  31 Cal.4th 728 (2003) ................................................................16

Jeung v. Yelp, Inc.,
  2015 U.S. Dist. LEXIS 107427 (N. D. Cal. Aug. 13, 2015) ..............................28

Jones v. Blige,
  558 F.3d 485 (6th Cir. 2009) ................................................................44

Kamar International v. Russ Berrie & Co.,
  657 F.2d 1059 (9th Cir. 1981) ................................................................44

Kenney v. Warner Bros. Entm't, Inc.,
  984 F.Supp.2d 9 (D. Mass. 2013)................................................................37, 43

Kibler v. Northern Inyo County Local Hospital Dist.,
  39 Cal.4th 192 (2006) ................................................................16

Kronemyer v. Internet Movie Database, Inc.,
  150 Cal.App.4th 941 (2007) ................................................................17, 27, 29

Lieberman v. KCOP Television, Inc.,
    110 Cal.App.4th 156 (2003) .......................................................................25, 26

Ludwig v. Superior Court,
    37 Cal.App.4th 8 (1995) ...................................................................................35

Lunada Biomedical v. Nunez,
    230 Cal.App.4th 459 (2014) .............................................................................17

M.G. v. Time Warner, Inc.,
    89 Cal.App.4th 623 (2001) ...............................................................................19

Makaeff v. Trump Univ., LLC,
    715 F.3d 254 (9th Cir. 2013) ............................................................................32

Mann v. Columbia Pictures, Inc.,
    128 Cal.App.3d 628 (1982) ...................................................................36, 40, 47

Meta-Film Assocs., Inc. v. MCA Inc.,
    586 F.Supp. 1346 (C.D. Cal. 1984) .......................................................41, 44, 54

Midland Pacific Building Corp. v. King,
    157 Cal.App.4th 264 (2007) .............................................................................22

Mindys Cosmetics, Inc. v. Dakar,
    611 F.3d 590 (9th Cir. 2010) .........................................................12, 13, 24, 30

Navellier v. Sletten,
    29 Cal.4th 82 (2002) ..................................................................................passim

New.Net, Inc. v. Lavasoft,
    356 F.Supp.2d 1090 (C.D. Cal. 2004) ..............................................................17

No Doubt v. Activision Publ'g, Inc.,
    192 Cal.App.4th 1018 (2011) .....................................................................29, 31

Nygard, Inc. v. Uusi-Kerttula,
    159 Cal.App.4th 1027 (2008) ...........................................................................30

Ray Charles Foundation v. Robinson,
    919 F.Supp.2d 1054 (C.D. Cal. 2013) ..............................................................17

Rokos v. Peck,
    182 Cal.App.3d 604 (1986) ...............................................................47

Sarver v. Chartier,
    813 F.3d 891 (9th Cir. 2016) .....................................................19, 31

Seelig v. Infinity Broadcasting Corp.,
    97 Cal.App.4th 798 (2002) ......................................................30, 31

Simpson Strong-Tie Co., Inc. v. Gore,
    49 Cal.4th 12 (2010) ....................................................................16

Soukop v. Law Offices of Herbert Hafif,
    39 Cal.4th 260 (2006) ..................................................................16

South Sutter, LLC v. LJ Sutter Partners, L.P.,
    193 Cal.App.4th 634 (2011) .........................................................17

Spinner v. ABC, Inc.,
    215 Cal.App.4th 172 (2013) ..................................................*passim*

Sutton v. Walt Disney Prods.,
    118 Cal.App.2d 598 (1953) ..........................................................36

Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.,
    122 Cal.App.4th 1049 (2004) .................................................13, 34

Tamkin v. CBS Broad., Inc.,
    193 Cal.App.4th 133 (2011) .....................................................19, 31

Tarantino v. Gawker Media, LLC,
    2014 U.S. Dist. LEXIS 77726 (C.D. Cal. April 22, 2014)..................38

Taus v. Loftus,
    40 Cal.4th 683 (2007) ..................................................................26

Three Boys Music Corp. v. Bolton,
    212 F.3d 477 (9th Cir. 2000) ....................................................37, 43

Trinity Christian Center of Santa Ana, Inc. v. McVeigh,
    2013 WL 5935562 (C.D. Cal. Oct. 31, 2013) ..................................42

U.S. Commodity Futures Trading Comm'n v. Paron Capital Mgmt.,
   LLC,
   2012 WL 1156396 (N.D. Cal. Apr. 6, 2012)................................................51, 52

van't Rood v. Count of Santa Clara,
   113 Cal.App.4th 549 (2003) ................................................................................52

Vess v. Ciba-Geigy Corp. USA,
   317 F.3d 1097 (9th Cir. 2003) ...........................................................................16

Vivendi SA v. T-Mobile USA Inc.,
   586 F.3d 689 (9th Cir. 2009) .............................................................................38

Walsh v. Nevada Dep't of Human Resources,
   471 F.3d 1033 (9th Cir. 2006) ...........................................................................30

Wang v. Wal-Mart Real Estate Business Trust,
   153 Cal.App.4th 790 (2007) .........................................................................23, 24

Washington Post Co. v. Keogh,
   365 F.2d 965 (D.C. Cir. 1966)...........................................................................35

Zamani v. Carnes,
   491 F.3d 990 (9th Cir. 2007) .........................................................................4, 12

**Statutes**

28 U.S.C. § 1367 ...................................................................................................4

California Civil Code
   § 2316................................................................................................................51
   § 2317................................................................................................................51

California Code of Civil Procedure
    § 425.16 (the "SLAPP statute") ................................................................*passim*
    § 425.16(a) ........................................................................................15, 35
    § 425.16(b) ...............................................................................................18
    § 425.16(b)(1). ....................................................................................14, 15
    § 425.16(b)(2) ...........................................................................................13
    § 426.16(c) ................................................................................................12
    § 425.16(e) .........................................................................................14, 15
    § 425.16(e)(4) ...........................................................................................18
    § 425.16(g) ...............................................................................................58
    § 425.16(i) ..................................................................................................4
    § 904.1.......................................................................................................4

California Penal Code § 632 ....................................................................26

**Rules**

Circuit Rule 28-2.7...................................................................................5

F.R.C.P.
    8(a)(2) ....................................................................................................38
    12(b)(6) ....................................................................................................4
    12(f)........................................................................................................10

Fed. R. App. P.
    (4)(a)(1)(A) ..............................................................................................5
    28(f).........................................................................................................5

**Constitutional Provisions**

United States Constitution, First Amendment ......................................27, 28, 34, 35

**Other Authorities**

4 Melville B. Nimmer & David Nimmer, NIMMER ON
    COPYRIGHT § 19D.05[C] (Bender, 2011) ........................................48

**1.**
## SUMMARY OF ARGUMENT

The lawsuit underlying this appeal arises from the creation, production, and distribution of the film "The Purge," its shooting script ("Shooting Script"), and its sequel "The Purge: Anarchy" ("Anarchy") (collectively, "the Works"). Plaintiff Douglas Jordan-Benel claims that his ideas, embodied in an unpublished Screenplay, were "stolen" by writer James DeMonaco and producer Why Not Productions ("WNP"); Plaintiff claims what amounts to a monopoly right on the concepts contained in these fictional works. He has asserted a variety of claims against DeMonaco, WNP, and other entities involved in the production and distribution of the Works.[1]

Notably, Plaintiff does not claim that he <u>ever</u> had any direct contact with DeMonaco or WNP – or with any of the Film Defendants – nor does he claim that he ever sent his Screenplay to any of them. Instead, the operative Second Amended Complaint ("SAC") alleges that Plaintiff's manager emailed a copy of the Screenplay to two agents at United Talent Agency ("UTA") – Emerson Davis and David Kramer – and because DeMonaco and WNP were represented by a

---

[1] These defendants include Universal City Studios LLC ("Universal"), Blumhouse Productions, LLC ("Blumhouse"), Overlord Productions, LLC ("Overlord"), and Platinum Dunes Productions ("Platinum Dunes") (referred to collectively with WNP and DeMonaco as "the Film Defendants").

<u>different</u> agent at UTA, Charlie Ferraro, access to Plaintiff's Screenplay somehow was imputed to these defendants.[2]

Plaintiff then makes an even more farfetched claim: that this submission to <u>third parties</u> somehow created an implied-in-fact contract between him, DeMonaco and WNP. He relies on a narrow body of law that allows the legal fiction of an "implied" contract under certain limited circumstances, where both parties understand and impliedly agree that the disclosure of confidential information creates an obligation to pay the "idea man" if the information is used. <u>Desny v. Wilder</u>, 46 Cal.2d 715, 738-739 (1956).

Under the circumstances alleged here, however, Plaintiff's theory makes no sense: it would mean that someone disclosing an idea to <u>any</u> agent at a talent agency like UTA could claim that it effectively was submitted to <u>every</u> client of <u>every</u> agent working at the same company, creating an "implied contract" with dozens – if not hundreds – of writers, directors, actors, and entertainment industry executives. This attempt to dramatically expand the law, if permitted here, would turn well-established contract and agency law on its head.

The Film Defendants responded to Plaintiff's state-law claims with a Special Motion to Strike under California Code of Civil Procedure § 425.16 (the "SLAPP statute"), but the district court denied the motion, based solely on its erroneous

---

[2] Plaintiff also has sued UTA; it is not a party to this appeal.

finding that the SLAPP statute did not apply to Plaintiff's lawsuit. Plaintiff's implied-in-fact contract and declaratory relief claims derive from the <u>content</u> of the Works (<u>i.e.</u>, his assertion that the Works incorporated his ideas, and his claim that he was not given "credit" for the Films); not surprisingly, Plaintiff <u>did not dispute</u> that these claims fall within the ambit of the SLAPP statute. Nonetheless, the district court held, <u>sua sponte</u>, that the statute was inapplicable, finding that the implied contract claim arose from a "failure to pay" rather than the exercise of free speech. Excerpts of Record ("E.R.") 7.[3]

Because Plaintiff never challenged the SLAPP statute's applicability in his opposition brief, the Film Defendants had no opportunity to provide authorities demonstrating that the district court's argument improperly focused on the Plaintiff's <u>theory of liability</u>, rather than the Film Defendants' alleged <u>conduct</u>. E.R. 159. As the allegations in the SAC make clear, Plaintiff's implied contract and declaratory relief claims arise from the Film Defendants' creation, production, and distribution of expressive works – conduct that indisputably furthers the exercise of free speech, and falls squarely within the ambit of the SLAPP statute. <u>See</u> Section 7(B), <u>infra</u>.

---

[3] The court did not address the applicability of the SLAPP statute to Plaintiff's declaratory relief claim. E.R. 345-49.

Because it erroneously determined that the Film Defendants' conduct did not arise from protected activity, the district court did not consider the "public interest" requirement, or adjudicate the second prong of the statute: whether Plaintiff demonstrated a probability of prevailing on his claims.[4] Consistent with the statute's goal of expeditiously resolving lawsuits that threaten the exercise of free speech, and because the record below is complete, this Court should evaluate these issues in the first instance, and should find that the content of the Works and their creation involve matters of public interest, and that Plaintiff cannot meet his burden of demonstrating a probability of success. See Sections 7(C) & 8, infra.

## 2.
## JURISDICTION

**1.** **District Court Jurisdiction.** The district court properly exercised supplemental jurisdiction over Plaintiff's state-law claims. 28 U.S.C. § 1367.

**2.** **Appellate Jurisdiction.** An order denying a special motion to strike is immediately appealable. See Cal. Civ. Proc. Code §§ 425.16(i) and 904.1; see also DC Comics v. Pacific Pictures Corp., 706 F.3d 1009, 1015-1016 (9th Cir. 2013); Zamani v. Carnes, 491 F.3d 990, 994 (9th Cir. 2007); Batzel v. Smith, 333 F.3d 1018, 1024-1026 (9th Cir. 2003).

---

[4] The district court did consider some of the legal arguments raised in the SLAPP Motion, in the context of a concurrently-filed F.R.C.P. 12(b)(6) motion. See Section 5(C), infra.

**3.**     **Timeliness Of Appeal.**  The district court denied the SLAPP motion on June 24, 2015.  E.R. 1.  The Film Defendants timely appealed from that Order on July 6, 2015.  E.R. 34; Fed. R. App. P. (4)(a)(1)(A).

**3.**
**ISSUES PRESENTED**

1.     Does the SLAPP statute, which applies to any claim arising from "conduct in furtherance of free speech," regardless of how it is denominated, apply to implied-in-fact contract and declaratory relief claims arising from the creation, production, and distribution of two full-length feature films?

2.     Are the broad topics of the Film Defendants' Works – which include government-sanctioned killing, ethnic cleansing, and the psychology of consequence-free crime – matters of public interest within the broad parameters of the SLAPP statute?

3.     Can Plaintiff state a <u>Desny</u> claim for breach of implied-in-fact contract where there was no direct contact with any of the defendants or their authorized agents; the third-party recipients of Plaintiff's screenplay were never asked to provide it to any of the defendants; and there is no evidence that defendants ever were given a copy?

An Addendum containing the full text of the pertinent authorities appears at the end of this brief, pursuant to Fed. R. App. P. 28(f) and Circuit Rule 28-2.7.

## 4.
## STATEMENT OF THE CASE

Plaintiff filed this lawsuit in the Central District of California, alleging various state and federal claims against the Film Defendants arising from their alleged unauthorized use of Plaintiff's purported ideas in the Works. E.R. 2-4. The SAC included claims for breach of an implied-in-fact contract against DeMonaco and WNP, and a declaratory relief claim against all of the Film Defendants seeking a declaration that Plaintiff is entitled to "credit" for the Films. E.R. 850-51. It also included copyright infringement claims.

This appeal arises from the denial of the Film Defendants' SLAPP Motion pursuant to C.C.P. § 425.16. E.R. 24.

## 5.
## STATEMENT OF FACTS

### A.    Plaintiff's Lawsuit.[5]

In January 2011, Plaintiff authored a screenplay entitled "Settler's Day" ("the Screenplay"). E.R. 833. Plaintiff registered the Screenplay with the Writer's Guild of America ("WGA") on February 1, 2011, and with the Copyright Office nearly two years later, on October 1, 2013. E.R. 833.

---

[5] Unless otherwise indicated, the facts are drawn from Plaintiff's allegations in the SAC. By assuming certain factual allegations to be true for this appeal, the Film Defendants do not waive their right to challenge these facts if the lawsuit proceeds.

On June 30, 2011, Plaintiff's agent Adam Peck emailed David Kramer about the Screenplay; Plaintiff alleges Kramer was the head of the Motion Picture Literary Department at UTA. E.R. 833. Kramer responded on July 8, 2011, suggesting that Peck contact a UTA literary agent named Emerson Davis. E.R. 833.

Although Peck does not recall the specifics of his conversation with Davis, he believes he obtained permission to submit "Settler's Day" to Kramer and Davis, and subsequently emailed the Screenplay to them. E.R. 833. Five days later, Davis emailed Peck, "passing" on "Settler's Day."[6] E.R. 834.

On June 7, 2013, nearly two years later, the Film Defendants released "The Purge." E.R. 835. Plaintiff alleges that "The Purge," its Shooting Script, and "Anarchy"[7] are based on his Screenplay.

Plaintiff's lawsuit was filed on July 17, 2014; three months later, he filed an amended complaint that included a breach of implied-in-fact contract claim against

---

[6] Plaintiff does not claim that he sent the Screenplay to UTA in an effort to transmit it to any particular Film Defendant – nor does he allege that he even was aware that DeMonaco or WNP were represented by anyone at UTA. Instead, Plaintiff alleges that he sent his Screenplay to UTA: (1) to "sell" the Screenplay; and (2) to secure UTA's representation. E.R. 834. Plaintiff also does not claim that he or his agent sent his Screenplay directly to any of the Film Defendants, or that any of these Defendants participated in the communications between Peck, Kramer, and Davis.

[7] "Anarchy" was released on July 18, 2014. E.R. 846.

the Film Defendants and UTA.  E.R. 889-90.  On November 25, 2014, UTA

moved to dismiss Plaintiff's implied contract claim; on February 13, 2015, that

motion was granted as to all defendants, with leave to amend ("UTA Dismissal

Order").  E.R. 889-90.

On February 27, 2015, Plaintiff filed the operative SAC, which alleges

claims for copyright infringement and declaratory relief against each Film

Defendant; a claim for breach of implied-in-fact contract against UTA, DeMonaco

and WNP; and a claim for contributory copyright infringement against UTA.  E.R.

846-51.

## B.     The Film Defendants' Dispositive Motions.

On March 13, 2015, the Film Defendants filed three motions: (1) a Special

Motion To Strike Fourth And Fifth Claims For Relief Alleged In Second Amended

Complaint ("SLAPP Motion"); (2) a Motion To Dismiss Plaintiff's Second

Amended Complaint ("12(b)(6) Motion"); and (3) a Motion To Strike Portions Of

Plaintiff's Second Amended Complaint ("12(f) Motion").[8]  E.R. 901.

### 1.     The SLAPP Motion.

The SLAPP Motion was directed to Plaintiff's state law claims for breach of

implied contract and declaratory relief.  The Motion argued that these claims arise

solely from the exercise of the Film Defendants' right of free speech – namely,

---

[8] UTA also filed a Motion To Dismiss And Motion To Strike.  E.R. 900-01.

from the creation, production, and distribution of expressive works involving topics of widespread public interest – and thus, fall squarely within the scope of the SLAPP statute.  E.R. 327-32.  The burden therefore shifted to Plaintiff to establish a <u>probability</u> of prevailing on those claims, a burden Plaintiff could not meet for several reasons:

<u>First</u>, Plaintiff's claim for breach of implied-in-fact contract fails because Plaintiff failed to adequately plead facts which, if proven, would meet his burden of demonstrating that DeMonaco or WNP had <u>access</u> to his screenplay.  E.R. 332-37.  There was <u>no</u> direct contact with DeMonaco or WNP; instead, Plaintiff asserted that access should be imputed to them because Plaintiff submitted the Screenplay to two talent agents employed at the same agency (UTA) as the agent representing defendant DeMonaco.  But the law does not support a finding of "access" based on this kind of bare corporate receipt, particularly where it involves imputing "receipt" to third parties.

<u>Second</u>, Plaintiff's implied contract claim fails because he failed to plead facts sufficient to demonstrate the necessary elements of this claim.  E.R. 337-45.  There was <u>no</u> privity between Plaintiff, on the one hand, and DeMonaco or WNP, on the other hand; nor did Plaintiff plead facts sufficient to show that Kramer and/or Davis had <u>any</u> authority to bind DeMonaco or WNP to a contract.  Plaintiff also failed to plead facts sufficient to establish the other required elements for an

implied-in-fact contract, including a _mutual_ understanding about the conditions under which the Screenplay was submitted.

Third, the Film Defendants argued that Plaintiff's declaratory relief claim should be stricken because it is based on the same deficient allegations as Plaintiff's implied contract claim; because Plaintiff's demand for a writing "credit" on the films was a disguised reverse-passing-off claim that is barred by controlling authority; and because, if the claim was intended to allege anything other than reverse-passing-off, it is preempted by federal copyright law. E.R. 345-49.[9]

### 2. The 12(b)(6) Motion.

The 12(b)(6) Motion included the same arguments for dismissal of Plaintiff's state-law claims that were raised in the SLAPP Motion. E.R. 268-81. The Film Defendants also argued that Plaintiff's failure to adequately allege access barred his copyright infringement claims against them. E.R. 261-68.

### C. The Court's June 24 Order.

The Film Defendants' motions were heard on May 18, 2015. See Reporter's Transcript ("RT"). On June 24, 2015, the district court issued the following rulings pertinent to this appeal ("June 24 Order"):

---

[9] These arguments were included in the Film Defendants' motion to strike under F.R.C.P. 12(f). E.R. 306-10. That Motion also sought to strike references to statutory damages and attorneys' fees, and sought to strike new allegations that went beyond the limited permission Plaintiff was given to amend. E.R. 310-12.

First, the court denied the SLAPP Motion, on the ground that the statute did not apply to Plaintiff's implied contract and declaratory relief claims. The district court acknowledged that "the creation and distribution of *The Purge* relates to Plaintiff's claims," but held that the state-law claims arose from "the Defendants' failure to pay" Plaintiff for allegedly using his ideas to create the Works. E.R. 7.

Because it found that the SLAPP statute did not apply, the district court did not address whether the speech at issue (the Works) involved an issue of public interest, nor did it adjudicate whether Plaintiff had met his burden of establishing a probability of prevailing on his state-law claims.

Second, the district court denied the Film Defendants' 12(b)(6) Motion as to the implied-in-fact contract claim, finding that the alleged submission of the Screenplay to any agent at UTA was sufficient to establish contractual privity with DeMonaco. In reaching its conclusion, the court found that it was not "implausible" that the "agency" had authority to bind every client represented by any UTA agent to an implied-in-fact contract. E.R. 14.

The district court also denied the Film Defendants' motion to dismiss Plaintiff's copyright infringement claims against DeMonaco, WNP, Platinum Dunes, and Universal, finding that the alleged submission of the Screenplay to one of UTA's agents was sufficient to impute access to other UTA agents and their

clients. E.R. 16.[10] The court accepted the conclusory allegations in the SAC that Plaintiff's Screenplay must have been transferred by Kramer and Davis to DeMonaco's agent or to DeMonaco personally, and the bare allegation that defendants Platinum Dunes and Universal must have received the Screenplay from a third party literary agent, Ken Levin. E.R. 16.

Finally, the district court granted the Film Defendants' 12(f) Motion striking Plaintiff's declaratory relief claim in its entirety, with prejudice. E.R. 23.[11]

On July 6, 2015, the Film Defendants appealed the portion of the June 24 Order denying their SLAPP Motion. E.R. 34.

## 6.
## STANDARD OF REVIEW.

This Court reviews de novo the district court's denial of a special motion to strike under California's SLAPP statute. Doe v. Gangland Prods., 730 F.3d 946, 951 (9th Cir. 2013) (conducting de novo review); Mindys Cosmetics, Inc. v. Dakar, 611 F.3d 590, 595 (9th Cir. 2010) (same); Zamani, 491 F.3d at 994 (same).

---

[10] The court found, however, that Plaintiff failed to sufficiently allege access as to Blumhouse and Overlord, and dismissed the copyright claims against these defendants with prejudice. E.R. 17. Plaintiff's motion for reconsideration of that ruling was denied. E.R. 32.

[11] Under C.C.P. § 425.16(c), a prevailing defendant is entitled to recover the fees and costs incurred in defending against a SLAPP suit. If this Court determines that the SLAPP statute applies here, because the Film Defendants prevailed on the declaratory relief claim, the matter should be remanded to the district court to determine the amount of fees and costs that should be awarded to the Film Defendants for defending against that claim.

This de novo review includes the determination of whether the moving party has met its burden of demonstrating that the SLAPP statute applies. Graham-Sult v. Clainos, 756 F.3d 724, 735 (9th Cir. 2014) (both prongs of SLAPP analysis reviewed de novo); Doe, 730 F.3d at 951 (reviewing first prong of SLAPP statute de novo); Sylmar Air Conditioning v. Pueblo Contracting Services, Inc., 122 Cal.App.4th 1049, 1056-1057 (2004) (court "independently determine[s] whether a cause of action is based upon activity protected under the statute, and if so, whether the plaintiff has established a reasonable probability of prevailing"). See also C.C.P. § 425.16(b)(2) ("[i]n making [its] determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based"); Canyon View Estates v. FDIC, 472 F.App'x 493, 495 (9th Cir. Mar. 19, 2012) (same). Thus, this Court must engage in the same two-part inquiry as the district court to determine whether the defendants made their threshold showing and whether the plaintiff established a probability of prevailing. Doe, 730 F.3d at 951; Mindys Cosmetics, 611 F.3d at 595.

**7.**

**THE DISTRICT COURT ERRED IN REFUSING TO APPLY THE SLAPP STATUTE TO CLAIMS ARISING FROM THE CREATION, PRODUCTION, AND DISSEMINATION OF FILMS ABOUT MATTERS OF PUBLIC INTEREST.**

In 1992, the California Legislature enacted the SLAPP statute to provide for the "early dismissal of unmeritorious claims" that "interfere with the valid exercise of the constitutional rights of freedom of speech and petition." Club Members for an Honest Election v. Sierra Club, 45 Cal.4th 309, 315 (2008). Under the statute, any "cause of action against a person arising from any act … in furtherance of the person's right of … free speech … in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." C.C.P. § 425.16(b)(1). The statute creates a two-step process for determining whether a cause of action must be stricken under Section 425.16. Navellier v. Sletten, 29 Cal.4th 82, 88 (2002). "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." Id. To make this showing, defendant must demonstrate that plaintiff's causes of action arise from actions by defendant that "fit[] one of the categories spelled out in … section 425.16, subdivision (e)." Id. These include claims arising from "any … conduct [by defendant] in furtherance

of the exercise of the constitutional right … of free speech in connection with … an issue of public interest." Id.

If defendant meets its threshold showing, the second prong of the statute shifts the burden to plaintiff to establish, with competent evidence, "a probability that [he] will prevail on the claim[s]." C.C.P. § 425.16(b)(1). If plaintiff cannot meet that burden, his claims must be dismissed with prejudice. Id.

Here, although Plaintiff did not dispute that the SLAPP statute applied to his state-law claims (E.R. 159), the district court nonetheless denied the Film Defendants' SLAPP Motion based solely on its analysis of the first prong of the statute. Because this sua sponte ruling was inconsistent with the statute's language and controlling law, it should be reversed.

## A.  Section 425.16 Must Be Interpreted Broadly.

It is well established that courts evaluating whether the SLAPP statute applies in a particular case must interpret it broadly. Any doubt about the Legislature's intent was eliminated in 1997, when it responded to court decisions narrowly interpreting the statute by amending Section 425.16 to declare that it "shall be construed broadly." C.C.P. § 425.16(a). The California Supreme Court subsequently held that the "broad construction expressly called for in [Section 425.16] is desirable from the standpoint of judicial efficiency," cautioning that a narrow construction "would serve Californians poorly." Briggs v. Eden Counsel

For Hope & Opp., 19 Cal.4th 1106, 1121-1122 (1999) (tracing the legislative history of the 1997 amendment).[12]  The Court consistently has rejected attempts to impose limits on the statute that are unsupported by its language or history.[13]

The Supreme Court also has made clear that the statute's application does not depend on the particular nomenclature used by plaintiff; if a claim arises from conduct in furtherance of free speech, it falls within the scope of the statute regardless of its label.  See, e.g., Navellier, 29 Cal.4th at 91 (SLAPP statute's "definitional focus is not the form of the plaintiff's cause of action, but rather, the defendant's activity that gives rise to his or her asserted liability") (original emphasis); Church of Scientology v. Wollersheim, 42 Cal.App.4th 628, 652 (1996) ("the nature … of the action is not what is critical"), disapproved on other grounds,

---

[12] As this Court recognized, federal courts evaluating claims brought under state law "must begin with the pronouncements of the state's highest court …." Hilton v. Hallmark Cards, 599 F.3d 894, 905 (9th Cir. 2010) (applying SLAPP statute).  This Court's decisions have followed California courts in finding that the SLAPP statute must be broadly applied.  Id. at 906.

[13] See, e.g., Jarrow Formulas, Inc. v. LaMarche, 31 Cal.4th 728, 735 (2003) (adhering to the "express statutory command" that the SLAPP statute be "construed broadly"); Soukop v. Law Offices of Herbert Hafif, 39 Cal.4th 260, 279 (2006) ("the Legislature has directed that the statute 'be construed broadly'"); Kibler v. Northern Inyo County Local Hospital Dist., 39 Cal.4th 192, 199 (2006) (applying broad construction to statute); Simpson Strong-Tie Co., Inc. v. Gore, 49 Cal.4th 12, 21-22 (2010) (same).  Among other holdings, the Supreme Court rejected attempts to impose an "intent to chill" requirement onto the statute.  See, e.g., Equilon Enterprises v. Consumer Cause, Inc., 29 Cal.4th 53, 61 (2002).  See also Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1109 (9th Cir. 2003) (same).

Equilon, 29 Cal.4th 53 (2002). Accordingly, courts have held that the statute applies to a wide variety of claims, including breach of contract[14] and declaratory relief.[15]

Although Plaintiff's Opposition did not dispute the applicability of the SLAPP statute to his state-law claims, the district court raised this issue sua sponte, expressing concern about applying the statute to a "contract" claim. See, e.g., E.R. 9 (opining that application of the SLAPP statute "would render every contract claim involving any form of creative activity subject to an anti-SLAPP"). The district court did not address the application of the statute to Plaintiff's declaratory relief claim, even though that was argued in the SLAPP Motion. E.R. 345-49.

As discussed below, this narrow interpretation of the SLAPP statute is inconsistent with its language, including its express requirement that it be interpreted "broadly," and with the many cases confirming its broad scope.

---

[14] Doe, 730 F.3d at 952-954; Navellier, 29 Cal.4th at 86, 91-92; Ray Charles Foundation v. Robinson, 919 F.Supp.2d 1054, 1064-1065 (C.D. Cal. 2013).

[15] Fintland v. Luxury Marine Group LLC, 2010 U.S. Dist. LEXIS 24959, *17 (C.D. Cal. March 1, 2010); New.Net, Inc. v. Lavasoft, 356 F.Supp.2d 1090, 1097, 1115 (C.D. Cal. 2004); Lunada Biomedical v. Nunez, 230 Cal.App.4th 459, 469 (2014); South Sutter, LLC v. LJ Sutter Partners, L.P., 193 Cal.App.4th 634, 665 (2011); Kronemyer v. Internet Movie Database, Inc., 150 Cal.App.4th 941, 950 (2007).

**B.      The District Court Should Have Found That Plaintiff's State Law Claims Arise From Conduct In Furtherance Of The Film Defendants' Rights Of Free Speech.**

By its terms, the SLAPP statute applies not only to claims arising from the content of speech, but also to claims arising from conduct "in furtherance of" free speech rights in connection with a matter of public interest.  City of Cotati v. Cashman, 29 Cal.4th 69, 78 (2002); C.C.P. § 425.16(e)(4).

The SLAPP Motion was directed to Plaintiff's claim for breach of implied-in-fact contract against DeMonaco and WNP, and his declaratory relief claim against all the Film Defendants.  E.R. 326.  Both claims arise directly from the content of the Film Defendants' speech – the Works – and from alleged conduct in furtherance of speech – the creation, production, and distribution of expressive works.

**1.      Plaintiff's State Law Claims Against The Film Defendants Arise From Protected Conduct.**

In evaluating whether a claim arises from conduct in furtherance of free speech rights, a court should consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."  Navellier, 29 Cal.4th at 88, quoting C.C.P. § 425.16(b).  Plaintiff's allegations confirm that the alleged conduct underlying his breach of implied-in-fact contract and declaratory relief claims consists of speech or conduct in furtherance of speech.

18

The SAC alleges that the "conduct" by the Film Defendants that purportedly gives rise to Plaintiff's state law claims was:

- DeMonaco wrote the Shooting Script (see E.R. 835);

- The Film Defendants incorporated ideas from Plaintiff's Screenplay into the Works (E.R. 850);

- The Film Defendants produced "The Purge" (see E.R. 835); and

- The Film Defendants released "The Purge" and "Anarchy" (E.R. 835, 846).[16]

Because these are the only actions attributed to the Film Defendants, this is the only conduct upon which Plaintiff's claims against them can be based. These actions either involve direct "speech" or conduct "in furtherance of" speech within the meaning of the SLAPP statute. See, e.g., Sarver v. Chartier, 813 F.3d 891, 901-902 (9th Cir. 2016) (creation/distribution of fictional film); Doe, 730 F.3d at 954-955 (creation/broadcast of television program); Hilton, 599 F.3d at 904 (distribution of greeting cards); Alexander v. AETN, LLC, 2011 U.S. Dist. LEXIS 99913 (E.D. Cal. Sept. 2, 2011) (broadcast of television program); Tamkin v. CBS Broad., Inc., 193 Cal.App.4th 133, 143 (2011) (creation of television show); M.G.

---

[16] Plaintiff does not allege that any of the Film Defendants solicited Plaintiff's Screenplay or participated in any discussions with Plaintiff or his agent; that Plaintiff or his agent sent the Screenplay directly to any of the Film Defendants; or that any of the Film Defendants negotiated or expressly entered into any contractual relationship with Plaintiff.

v. Time Warner, Inc., 89 Cal.App.4th 623 (2001) (broadcast of HBO program and publication of magazine article); Aronson v. Dog Eat Dog Films, Inc., 738 F.Supp.2d 1104, 1111 (W.D. Wash. 2010) (creation/distribution of film).

The district court incorrectly focused on the type of claim alleged, finding that the theft-of-ideas claim arose from the Film Defendants' purported "fail[ure] to pay Plaintiff for the disclosure of the idea contained in the [Screenplay]." E.R. 7. This holding wrongly assumed that breach of contract claims categorically fall outside the SLAPP statute, even where – as here – the purported "breach" arises from protected speech. See Section 7(B)(2). The district court also failed to recognize that pre-publication conduct (including creation and production of a film) falls within the scope of the SLAPP statute. See Section 7(b)(3). Finally, by assuming that the Film Defendants wrongfully "failed to pay" Plaintiff, the district court improperly conflated the first and second prongs of the SLAPP analysis. See Section 7(B)(4).

### 2. Plaintiff Cannot Evade The SLAPP Statute By Couching His Claims As An Alleged "Breach Of Contract."

As the California Supreme Court held in Navellier, claims for breach of contract "are not categorically excluded from the operation of the anti-SLAPP statute …." 29 Cal.4th at 92 (emphasis added). The Court rejected the plaintiffs' argument that their lawsuit was for breach of a release agreement, and therefore did not arise from defendant's filing of counterclaims against them:

The logical flaw in plaintiffs' argument is its false dichotomy between actions that target "the formation or performance of contractual obligations" and those that target "the exercise of the right of free speech." …. <u>A given action, or cause of action, may indeed target both.</u>  As the facts in this lawsuit illustrate, conduct alleged to constitute breach of contract may <u>also</u> come within constitutionally protected speech or petitioning.

<u>Id.</u> at 91-92 (emphasis added).

In the wake of <u>Navellier</u>, other courts, including this Court, have applied the SLAPP statute to claims involving alleged "breaches" of "agreements."  In <u>Doe</u>, for example, the plaintiff claimed that he agreed to be interviewed for a television program on the condition that his identity would be concealed.  730 F.3d at 951.  When his face was shown in the aired episode, he sued the show's producers for various claims, including "false promise."  <u>See id.</u> at 952.

The district court denied the defendants' SLAPP motion, holding that the claims arose from the defendants' alleged failure to honor their agreement to conceal the plaintiff's identity, rather than "speech."  <u>See id.</u> at 952-953.  This Court reversed, finding that the claims arose from the defendants' pre-broadcast conduct in conducting the interview, and from the content of the broadcast itself; plaintiff's claim that the defendants breached an agreement concerning that content "ha[d] no bearing on whether Defendants engaged in protected activity."  <u>Id.</u> at 954.

21

California courts have reached similar results. For example, in <u>Hupp v. Freedom Comm'ns, Inc</u>., 221 Cal.App.4th 398, 400-401 (2013), the plaintiff sued a newspaper for allegedly "breaching" its user agreement by failing to remove comments about him from its website. The plaintiff appealed from an order granting a SLAPP motion, arguing that the statute did not apply to his "garden variety breach of contract action." <u>Id.</u> at 401. The appellate court disagreed, holding that the newspaper's conduct, maintaining a website that publishes articles of public interest and allowing user comments, "facilitates free speech and the exchange of ideas and opinions on the Internet." <u>Id.</u> at 404-405.[17]

The two cases cited by the district court – to which the Film Defendants had no opportunity to respond – do not support its ruling. In fact, in <u>Feldman v. 1100 Park Lane Associates</u>, 160 Cal.App.4th 1467 (2008), the Court of Appeal <u>rejected</u> the argument that the plaintiffs' breach of contract claim could be separated from their "petitioning" activity.

---

[17] <u>Accord</u> <u>D'Arrigo Bros. of Cal. v. United Farmworkers of America</u>, 224 Cal.App.4th 790, 800 (2014) (SLAPP statute applied to contract claim arising from defendant's conduct in pursuing allegations that employer unlawfully promised benefits to its employees to undermine a union's support); <u>Midland Pacific Building Corp. v. King</u>, 157 Cal.App.4th 264, 273 (2007) (contract claim by property developers against sellers arising from their submission of a high density tract map to government entities involved acts in the furtherance of sellers' right of petition and speech).

In Feldman, a couple interested in subleasing an apartment were told by the owner's attorney that their sub-tenancy was approved. See id. at 1473-1474. Another representative of the owner reneged, initiating eviction proceedings. See id. When the couple cross-complained for breach of contract, the owner filed a SLAPP motion, claiming the conduct alleged to be a "breach" was protected by his right to petition. Id. at 1475. The appeals court agreed, rejecting the argument that the owner's conduct in allegedly "breaching" the sub-tenancy agreement was separate from his protected petitioning activity. See id. at 1483. As the court explained, "conduct alleged to constitute a breach of contract may also come within the statutory protections for protected speech or petitioning." Id. at 1483-1484. Emphasizing that the focus must be on "defendants' activities challenged in the cross-complaint," the court noted that the actions at issue (the initiation of eviction proceedings) "were the protected activities."[18] Id.

Similarly, the conduct Plaintiff claims was a violation of an "implied" contract here were the Film Defendants' "protected activities" – the creation, production, and distribution of the Films.

The district court's reliance on Wang v. Wal-Mart Real Estate Business Trust, 153 Cal.App.4th 790 (2007), also is misplaced. There, the plaintiffs sold

---

[18] In contrast, the activity supporting a negligent misrepresentation claim was the approval of the sublease by the owner's attorney. See id. at 1493.

two parcels of land to the defendant, retaining adjacent parcels. Id. at 795. The plaintiffs allegedly understood that a street providing access to their land would be relocated, but instead, the defendant obtained a resolution replacing the street with an emergency vehicle easement and alley, which impaired plaintiffs' access to their land. Id. at 796-797.

The plaintiffs sued for breach of contract and fraud, and the defendant filed a SLAPP motion. Id. at 798. The appeals court held that the claims did not arise from the defendants' conduct in obtaining development permits; instead, the court found that the thrust of the plaintiffs' complaint involved the private dealings between the parties, rather than the defendant's "collateral" conduct in obtaining governmental approvals. See id. at 799.

Here, in contrast, the Film Defendants' alleged creation, production, and distribution of the Works is not "collateral" to Plaintiff's state law claims – it is the only conduct by the Film Defendants alleged in the SAC as a basis for those claims. Put another way, "but for" the Film Defendants' creation, production, and distribution of the Works, would Plaintiff have brought this lawsuit? Mindys Cosmetics, 611 F.3d at 598. The answer is plainly no. Under these circumstances, as the Ninth Circuit held in Mindys Cosmetics, the SLAPP statute clearly applies.

### 3. The Alleged Pre-Publication Conduct Falls Within The Scope Of The SLAPP Statute.

Courts consistently have rejected efforts to distinguish between claims arising from the content of a publication and claims arising from pre-publication conduct, finding that pre-publication activities "in furtherance" of the rights of free speech fall within the scope of the statute. This Court's decision in Doe again offers guidance. The district court, in denying the SLAPP motion, attempted to distinguish between the "content" of the television program and the alleged "pre-broadcast" promise to conceal the plaintiff's identity. 730 F.3d at 951-952. In reversing, this Court explained that "pre-publication or pre-broadcast acts such as investigating, newsgathering, and conducting interviews constitute conduct that furthers the right of free speech." Id. at 953.[19]

The court in Lieberman v. KCOP Television, Inc., 110 Cal.App.4th 156 (2003), reached a similar conclusion. There, reporters posing as patients secretly recorded a doctor improperly prescribing Vicodin, then broadcast the tapes on a

---

[19] The district court here attempted to distinguish Doe, stating that the false promise claim in that case was different from the implied contract claim here. E.R. 8. But the application of the SLAPP statute does not depend on labels. See Section 7(A). In both cases, the alleged pre-publication conduct involved a purported "promise" concerning the content of speech: in Doe, the purported "promise" was to disguise the plaintiff's identity in a broadcast; here, Plaintiff asserts an "implied" promise not to use his ideas, without some unspecified consideration. In both cases, the inclusion of material in the content in violation of a "promise" gave rise to the claims.

news program. Id. at 162. When the doctor sued under Penal Code § 632, the station filed a SLAPP motion. Id. The plaintiff claimed the SLAPP statute did not apply because "the secret recording was not an act in furtherance of [defendant's] right of free speech." Id. at 165. The court disagreed, holding that "conduct" within the meaning of the SLAPP statute "is not limited to the exercise of [the] right of free speech, but to all conduct in furtherance of the exercise of the right of free speech …." Id. at 166. The term "furtherance," the court explained, "means helping to advance, assisting." Id. at 166. Because "[r]eporting the news usually requires the assistance of newsgathering," the court reasoned that the pre-broadcast newsgathering activity was conduct "undertaken in furtherance of the news media's right to free speech." Id. See also Taus v. Loftus, 40 Cal.4th 683, 713 (2007) (claims alleged by subject of study on recovered memory against authors and publishers of an article criticizing the study were within SLAPP statute; defendants' conduct – including "conducting an investigation with regard to the validity of the [study]" – was "unquestionably" conduct "in furtherance of their right of free speech"); Hall v. Time Warner, 153 Cal.App.4th 1337, 1344, 1347 (2007) (holding that trespass and intrusion claims arising from defendants' conduct in interviewing plaintiff arose from acts "in furtherance" of speech).

The same is true here. Plaintiff's allegations that there was some kind of implied agreement not to use any "ideas" in his Screenplay without paying him –

and his claims that the creation, production, and distribution of two feature films "breached" that agreement – clearly involves conduct in furtherance of speech. Accord Hunter v. CBS Broadcasting, Inc., 221 Cal.App.4th 1510, 1521 (2013) (selection of news anchor is conduct in furtherance of speech); Kronemyer, 150 Cal.App.4th at 947 (listing credits on website is conduct in furtherance of free speech). The district court's contrary conclusion should be reversed.[20]

### 4. The District Court's Rationale Improperly Conflated The Two Distinct Parts Of The SLAPP Analysis.

In finding the Film Defendants' alleged "failure to pay" is the conduct that gives rise to Plaintiff's claims, the district court made an improper determination at the first step of the SLAPP analysis that a contractual obligation existed and was breached by these defendants. But the first prong of the SLAPP analysis determines only whether the defendant's alleged conduct qualifies as protected activity. As this Court explained in Doe:

> To determine whether a defendant has met its initial burden, a court does not evaluate whether defendant's conduct was lawful or

---

[20] The district court's concern that applying the SLAPP statute here "would render every contract claim involving any form of creative activity subject to anti-SLAPP" is unfounded. E.R. 9. This Court already has rejected "the fallacy that the anti-SLAPP statute allows a defendant to escape the consequences of wrongful conduct by asserting a spurious First Amendment defense[,]" noting that claims possessing the requisite merit are not subject to dismissal under the statute. Doe, 730 F.3d at 955 n.3. See also Navellier, 29 Cal.4th at 92 ("[t]he Legislature's inclusion of a merits prong to the statutory SLAPP definition" was sufficient to "preserve[] appropriate remedies for breaches of contracts involving speech").

unlawful. Instead, any claimed illegitimacy of the defendant's acts is an issue which the plaintiff must raise and support in the second step of the analysis when the plaintiff bears the burden to show a probability of prevailing. If it were the case that a defendant must first establish that its actions are constitutionally protected under the First Amendment as a matter of law, then the secondary inquiry as to whether the plaintiff has established a probability of success would be superfluous.

730 F.3d at 954 (quotation marks and citations omitted).[21]

The court in Jeung v. Yelp, Inc., 2015 U.S. Dist. LEXIS 107427, *9 (N. D. Cal. Aug. 13, 2015), similarly distinguished between the two prongs of the SLAPP statute, finding that claims brought by a putative class seeking compensation from Yelp for writing reviews that were posted on the website fell under the statute. See id. at *1, *9. The plaintiffs argued that "they merely [sought] to hold Yelp liable under quasi-contractual theories for non-payment of wages[.]" Id. at *9. The court disagreed, holding that "[a] plaintiff's theory of liability … is not relevant to the question of whether the claim 'arises from' a defendant's exercise of free speech rights." Id. Because Yelp's publication of reviews "indisputably" involved speech, the plaintiffs' claims, which included quantum meruit and unjust enrichment, were subject to the SLAPP statute. Id. See also DuPont Merck v.

---

[21] See also Greater Los Angeles Agency on Deafness, Inc. v. Cable News Network, Inc. ("GLAAD"), 742 F.3d 414, 424 (9th Cir. 2014) (same); Fox Searchlight v. Paladino, 89 Cal.App.4th 294, 304 (2001) (same); Governor Gray Davis Committee v. American Taxpayers Alliance, 102 Cal.App.4th 449, 458 (2002) (same).

Superior Court, 78 Cal.App.4th 562, 566-567 (2000) (court found plaintiffs'

lawsuit for trade libel fell within SLAPP statute; plaintiffs' argument that "false,

deceptive, and misleading statements are not protected by the right of free speech"

was "placing the cart before the horse"; truth would be considered under second

prong of SLAPP analysis); No Doubt v. Activision Publ'g, Inc., 192 Cal.App.4th

1018, 1027 n.3 (2011) ("under the statutory scheme, a court must generally

presume the validity of the claimed constitutional right in the first step of the anti-

SLAPP analysis, and then permit the parties to address the issue in the second step

of the analysis, if necessary").

Here, the district court was required to presume at the first step of the

SLAPP analysis that the Film Defendants had the right to create, produce, and

distribute the Works. Whether those rights of free speech were restricted by an

implied contract should have been reserved for the second part of the analysis.

Finally, Plaintiff's declaratory relief claim, which purports to allege that he

is entitled to a writing credit, independently arises from protected conduct. As the

court explained in Kronemyer, the decision not to identify a person in the credits of

an expressive work is an act in furtherance of free speech. 150 Cal.App.4th at 947

(SLAPP statute applied to declaratory relief action arising from refusal to credit

plaintiff as film producer). The district court's decision failed to consider this

basis for applying the SLAPP statute. For this additional reason, and for the

reasons set forth above, the district court's ruling denying the SLAPP Motion should be reversed.

## C.     The Speech At Issue Involved A Matter Of Public Interest.[22]

Although the district court did not reach the issue of whether the Film Defendants' speech involved a matter of public interest, this Court reviews the denial of a SLAPP motion de novo.  Mindys Cosmetics, 611 F.3d at 595; Section 6.  As part of its review, this Court can and should find that the Film Defendants' speech – the Works – involved matters of significant public interest.  See GLAAD, 742 F.3d at 422; Hunter, 221 Cal.App.4th at 1526.

The "public interest" requirement, "like all of section 425.16, is to be construed broadly …."  Seelig v. Infinity Broadcasting Corp., 97 Cal.App.4th 798, 808 (2002).  An issue of public interest has been broadly defined as "any issue in which the public is interested," and  "need not be 'significant' to be protected by the anti-SLAPP statute …."  Nygard, Inc. v. Uusi-Kerttula, 159 Cal.App.4th 1027, 1042 (2008); Cross v. Cooper, 197 Cal.App.4th 357, 372-373 (2011) (same).  As this Court held in applying the statute to a greeting card, "the activity of the

---

[22] Plaintiff did not dispute that the topics addressed in the Works are matters of significant public interest.  He cannot do so for the first time on appeal.  Hunter, 221 Cal.App.4th at 1526.  See also Walsh v. Nevada Dep't of Human Resources, 471 F.3d 1033, 1037 (9th Cir. 2006) ("[i]ssues not presented to a district court generally cannot be heard on appeal"); Harik v. California Teachers Ass'n, 326 F.3d 1042, 1052 (9th Cir. 2003) (defendants in class action could not challenge numerosity requirement for first time on appeal).

defendant need not involve questions of civic concern; social or even low-brow topics may suffice ….” <u>Hilton</u>, 599 F.3d at 905-06.

This broad standard is easily met here. As widely disseminated expressive works, the films <u>themselves</u> are matters of public interest. <u>See</u>, <u>e.g.</u>, <u>Tamkin</u>, 193 Cal.App.4th at 143 (popularity of television program showed public was “demonstrably interested in the creation and broadcasting of that episode” for the purposes of SLAPP statute); <u>Seelig</u>, 97 Cal.App.4th at 807-08 (popularity of television program demonstrated it was of “significant interest”); E.R. 350-58 (referencing news reports about Films).

Moreover, the topics addressed <u>in</u> the Works involve social and cultural issues of interest to the public.[23] The Works present a seemingly utopian future society where crime rates are nearly non-existent, purportedly due to the opportunity citizens have to “purge” their negative emotions annually by

_____

[23] In considering this requirement, courts should consider the broad topics that are included in the work at issue. <u>See</u>, <u>e.g.</u>, <u>Sarver</u>, 813 F.3d at 901 (“we have construe[d] ‘public issue or public interest’ broadly in light of the statute’s stated purpose to encourage participation in matters of public importance or consequence”); <u>Seelig</u>, 97 Cal.App.4th at 808 (court focused on the overall topic of the radio show); <u>Ingels v. Westwood One Broadcasting</u>, 129 Cal.App.4th 1050, 1056, 1064 (2005) (on-air discussion between actor and radio host involved an issue of public interest because it addressed “subjects of interest to the public at large,” including “relationships between men and women”); <u>No Doubt</u>, 192 Cal.App.4th at 1027 (“Guitar Hero” video game involved matter of public interest); <u>Dyer v. Childress</u>, 147 Cal.App.4th 1273, 1277, 1280, 1284 (2007) (broad topic of fictional film depicting issues facing Generation X was of public interest).

committing crimes (including killing other people) without punishment. E.R. 447-554.[24] "The Purge" focuses on one family, whose patriarch benefitted financially from the annual event, and their slow recognition of the implications of "purging." It also delves into the more sinister economic implications of this system, given that the primary targets of the government-sanctioned killing-spree are poorer members of society. E.R. 484.

This disturbing premise captured the public's attention and sparked extensive public discussion. E.R. 755-812.[25] The broad topic of government-sanctioned killing itself is a widely debated topic, both in fictional works and real life.[26] Similarly, the concept of excising "undesirable" members of society has been widely examined, from academic studies investigating ethnic cleansing in Darfur, to newspaper articles discussing gentrification in Harlem. E.R. 631-708.[27]

---

[24] DVDs of the films were lodged in the district court. E.R. 828.

[25] Courts can properly consider news articles and news reports in evaluating the extent of public interest in a topic for purposes of the SLAPP analysis. E.R. 360-61. Makaeff v. Trump Univ., LLC, 715 F.3d 254, 259 n.2 (9th Cir. 2013) (taking judicial notice of "book collaborations . . . newspaper and magazine articles, and web pages . . . to indicate what was in the public realm at the time" (quotation marks omitted.))

[26] E.R. 555-630. The concept of government-sanctioned violence has been examined in other fictional films, including "Escape from New York," "The Hunger Games," and "Mad Max," among others. E.R. 377-89.

[27] Ethnic and social cleansing has been a central theme in many literary works, including films like "Tears of the Sun," "Hotel Rwanda," "Schindler's

And Utopian fiction has been a hallmark of the social imagination since Thomas More's "Utopia" in 1516.[28]  The broad topics examined in the Works easily satisfy the public interest requirement of Section 425.16.

**8.**
**PLAINTIFF CANNOT ESTABLISH A PROBABILITY OF PREVAILING ON HIS CONTRACT OR DECLARATORY RELIEF CLAIMS.**

Because the SLAPP statute should have been applied to Plaintiff's state-law claims, he faced the burden of demonstrating a probability of success on his implied contract and declaratory relief claims.  He failed to meet his burden.

---

List," "The Pianist," "The Reader," "In the Land of Blood and Honey," and "The Running Man," and in classic novels like "Lord of the Flies."  E.R. 390-417.

[28] The concept of utopias, and false utopias, are themes in contemporary literature, including works like "The Giver," "The Time Machine," "Logan's Run," "Soylent Green," "Divergent," "Brave New World," and "Elysium."  E.R. 418-446.

**A.    This Court Can And Should Decide In The First Instance Whether Plaintiff Demonstrated A Probability Of Success On The Merits.**

Because the district court erroneously found that the Film Defendants had not met their burden under the first prong of the SLAPP statute, it did not determine whether Plaintiff met his burden of demonstrating a probability of prevailing, or rule on the parties' evidentiary objections. E.R. 9. The Film Defendants respectfully request that this Court decide these issues in the first instance, rather than remanding this case to the district court.

This exercise of appellate discretion is appropriate, because the standard of review on the legal issues raised by the SLAPP Motion is de novo. Sylmar Air Conditioning, 122 Cal.App.4th at 1056; ComputerXpress, Inc. v. Jackson, 93 Cal.App.4th 993, 999 (2001); see also GLAAD, 742 F.3d at 420-421 (court reversed ruling on applicability of SLAPP statute and adjudicated merits prong); Doe, 730 F.3d at 953 (same); Navellier, 29 Cal.4th at 87, 95 (California Supreme Court held that SLAPP statute applied, and remanded the case to the court of appeal to determine in the first instance whether the plaintiffs had demonstrated a probability of prevailing on the merits).

This approach is consistent with the well-established principle that early resolution of First Amendment cases is favored to avoid the "chilling of first amendment rights inherent in expensive and time-consuming litigation." Hickey v. Capital Cities/ABC, Inc., 792 F.Supp. 1195, 1199 (D. Or. 1992), aff'd, 999 F.2d

543 (9th Cir. 1993) (citations omitted).  See also Washington Post Co. v. Keogh, 365 F.2d 965, 968 (D.C. Cir. 1966) ("summary procedures" are "essential" in the First Amendment area, where "[t]he threat of being put to the defense of a lawsuit … may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit").

These principles are particularly applicable in SLAPP cases, where the Legislature recognized a "public interest" in curbing "a disturbing increase in lawsuits brought" to chill First Amendment rights.  C.C.P. § 425.16(a).  Section 425.16 was intended to provide a "fast and inexpensive unmasking and dismissal" of lawsuits targeting the exercise of free speech.  Ludwig v. Superior Court, 37 Cal.App.4th 8, 15 (1995).  See also Equilon, 29 Cal.4th at 65 ("early resolution" of SLAPP cases is "consistent with the statutory design 'to prevent SLAPPs by ending them early and without great cost to the SLAPP target'").

Finally, in light of the district court's ruling on the Film Defendants' 12(b)(6) Motion, which addressed many of the same issues raised in this appeal (E.R. 246-81), remand would simply delay the ultimate resolution of these claims, and would be an inefficient use of judicial resources.  For all these reasons, this Court should evaluate in the first instance whether Plaintiff met his burden of demonstrating a probability of success on the merits.

**B.  Plaintiff's Implied Contract Claim Fails Because He Has Not Alleged Facts Sufficient To Establish Access To His Screenplay.**

To state a claim for breach of an implied contract, Plaintiff must plead and prove that the Film Defendants had access to the Screenplay that he claims was improperly copied.  Despite having three opportunities, Plaintiff's SAC failed to allege facts sufficient to meet his burden of demonstrating that DeMonaco or WNP had access to the unpublished Screenplay.  For this reason alone, his implied contract claim should have been stricken.

**1.  Access Is An Essential Element Of An Implied Contract Claim.**

Breach of implied-in-fact contract claims require the plaintiff to prove, among other things, that the defendant "used" his idea without authorization or compensation.  See Desny, 46 Cal.2d at 738-739; Spinner v. ABC, Inc., 215 Cal.App.4th 172, 184 (2013); Mann v. Columbia Pictures, Inc., 128 Cal.App.3d 628, 647 n.6 (1982); Faris v. Enberg, 97 Cal.App.3d 309, 318 (1979).  A plaintiff can raise an inference of "use" by showing that the defendant had access to the idea and the defendant's work and the plaintiff's idea are "substantially similar." Sutton v. Walt Disney Prods., 118 Cal.App.2d 598, 603 (1953).

Of particular importance here, "[r]easonable access requires more than a bare possibility, and may not be inferred through mere speculation or conjecture." Gable v. NBC, 727 F.Supp.2d 815, 824 (C.D. Cal. 2010) (emphasis added); see

36

also Three Boys Music Corp. v. Bolton, 212 F.3d 477, 482 (9th Cir. 2000)

(same).[29]  Instead, the facts alleged must be sufficient for the court to reasonably

infer access, either because the plaintiff's work was widely disseminated, or

through specific facts alleging a chain of events that shows access was not only

"possible" but "plausible."  Gable, 727 F.Supp.2d at 824 (emphasis added).

Plaintiff failed to meet this burden.

The Screenplay at issue was unpublished, and there was no allegation that it

had been publicly disseminated.  (E.R. 833-36.)[30]  Consequently, Plaintiff had to

present specific facts demonstrating access.  Hill v. Gaylord Entm't, 2008 WL

783756, *2 (S.D. Fla. March 20, 2008) (claim that plaintiff sent unpublished

manuscript to "publishers and literary agents" insufficient to show access).

Under controlling United States Supreme Court cases, this burden requires

more than conclusory allegations; "[t]hreadbare recitals of the elements of a cause

of action, supported by mere conclusory statements, do not suffice." Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009).  See also Bell Atl. Corp. v. Twombly, 550 U.S.

---

[29] Because the framework for establishing "use" in connection with an idea
submission claim is similar to the framework for establishing copying in a
copyright claim, courts often cite copyright cases in evaluating whether a plaintiff
alleging a Desny claim has established the requisite access.  Spinner, 215
Cal.App.4th at 186.

[30] The allegation that a work was registered with the Writer's Guild of America
does not satisfy this requirement.  Kenney v. Warner Bros. Entm't, Inc., 984
F.Supp.2d 9, 11-13 (D. Mass. 2013) (registering a work does not infer access
because "registration does not place a work in the public arena").

544, 555 (2007) ("a complaint does not suffice if it tenders naked assertions devoid of further factual enhancement").

Here, Plaintiff did not claim that he had any contact whatsoever with DeMonaco or WNP, nor did he plead any specific <u>facts</u> establishing that these defendants had access to the Screenplay.  <u>See generally</u>, E.R. 832-37.  Instead, Plaintiff's "access" theory is based on the allegation that his manager emailed a copy of the Screenplay to two agents at UTA – <u>neither</u> of whom is alleged to be the agent for DeMonaco or WNP – and the speculative conclusion, pleaded on "information and belief," that those agents must have given the Screenplay to a <u>different</u> UTA agent representing DeMonaco and WNP, who must have shared it with them.[31]

Under Rule 8(a)(2), allegations made on information and belief generally are insufficient to meet a plaintiff's pleading burden.  <u>See</u>, <u>e.g.</u>, <u>Vivendi SA v. T-Mobile USA Inc</u>., 586 F.3d 689, 694 (9th Cir. 2009) (finding allegations on information and belief insufficient); <u>Tarantino v. Gawker Media, LLC</u>, 2014 U.S. Dist. LEXIS 77726, *14 n. 4 (C.D. Cal. April 22, 2014) (same).  This Court should find that Plaintiff's conjectural allegations were insufficient to meet his burden

---

[31] In an earlier complaint, Plaintiff alleged that DeMonaco is represented by UTA agent Charlie Ferraro.  E.R. 875.  In a transparent attempt to evade dismissal, Plaintiff's SAC omitted this paragraph (although it still mentions Ferraro), alleging instead that DeMonaco and WNP are represented "by UTA."  E.R. 835.  This kind of disingenuous revision does not permit Plaintiff to avoid his earlier allegation.

under the SLAPP statute of demonstrating "access" by either DeMonaco or WNP.

### 2. Alleging Bare Corporate Receipt Does Not Infer Access.

Plaintiff's premise is that "access" to his unpublished work is established merely by alleging that it was sent to any agent at UTA – even though that person does not represent defendants – merely because a <u>different</u> agent at UTA represented two of the defendants. Under this theory, an aspiring plaintiff could ensure that virtually every studio, network, and celebrity is deemed to have "access" to his script, simply by submitting it to one agent at each of the major talent agencies. <u>No</u> court has ever adopted such a dramatic departure from well-established laws of agency. To the contrary, courts unequivocally have rejected this attenuated theory of access.

In <u>Gable</u>, for example, the plaintiff sued the creator of "My Name Is Earl" (among others), alleging the television program infringed his script. 727 F.Supp.2d at 818. He argued the program's creator – Gregory Thomas Garcia – had access to the script because the plaintiff had submitted it to a person at the same talent agency that represented Garcia. <u>See id.</u> at 825. According to the plaintiff, once the agency received his screenplay, "it [was] reasonable that Garcia, as a client of [the agency], would have access to it." <u>Id.</u>

The court disagreed, finding that a plaintiff cannot establish access by showing "bare corporate receipt of his work [.]" <u>Id.</u> at 826 (internal quotations

omitted).  Instead, "a plaintiff must show that he submitted his work to an intermediary who is in a position to transmit the plaintiff's work to the creators of the infringing work."  Id.  The fact that the recipient and Garcia's agent were at the same agency did not establish the requisite nexus.  Id. at 828.

Similarly, the court in Spinner rejected a theory of access based on corporate receipt.  There, the plaintiff sued the creators of the television program "LOST" for breach of implied-in-fact contract, alleging the program was based on a script he submitted to executives at ABC decades earlier.  215 Cal.App.4th at 175-176.  Although the plaintiff could not plead or prove direct access to any of the defendants, he theorized that executives involved in "LOST" had the opportunity to view his script "because ABC had a policy of permanently retaining unreturned scripts, and [his] script must have been present somewhere in a script library at ABC."  Id. at 187.

The court rejected this theory as pure "guesswork."  Id.  As the court explained, "[a]ccess means that the defendants had an opportunity to view or to copy the plaintiff's work[,]" and more than a "bare possibility" of access is required to make that showing.  Id. at 185.  "The relationship linking the intermediary and the creator should be more than the simple fact that they share a common employer."  Id.  See also Mann, 128 Cal.App.3d at 631, 636 (rejecting implied contract claim based on allegations that plaintiff submitted her story

40

outline to an executive at a company affiliated with the defendant studio); Meta-Film Assocs., Inc. v. MCA Inc., 586 F.Supp. 1346, 1356-1359 (C.D. Cal. 1984) (idea submission claim rejected where plaintiff allegedly showed work to a director who was under contract with the defendant and worked on the studio lot, where there was no connection between the director and the allegedly infringing project).

The district court, in denying the Film Defendants' 12(b)(6) Motion, found that Plaintiff sufficiently alleged "access" for his copyright infringement claims, by pointing to several conclusory allegations in the SAC. E.R. 17. None of these allegations meets the strict pleading requirements under Twombly and Iqbal, or establish more than the "bare possibility" of access that other courts repeatedly have found to be inadequate.

First, the district court credited Plaintiff's allegation that one of the two UTA agents that received Plaintiff's Screenplay, Kramer, was the "Managing Director" of Feature Productions at UTA. Plaintiff alleged – on "information and belief" – that Kramer must "supervise" other agents in the same department, including the agent representing DeMonaco and WNP. E.R. 834. Not only are allegations made on "information and belief" insufficient, there were no facts pleaded that would lead to the plausible conclusion that a UTA Managing Director would share materials submitted to him with all – or even any – of the agents he allegedly "supervised." Plaintiff did not allege that such a practice ever happened at UTA,

41

let alone that it was part of the agency's regular practice.

Next, the district court accepted Plaintiff's conclusory allegations that the Screenplay was somehow "transferred to DeMonaco" (E.R. 835-36), even though this allegation also was made on "information and belief." In short, Plaintiff alleged nothing more than his "belief" that DeMonaco and WNP received the Screenplay, based on the allegation that <u>someone</u> at UTA received it, and DeMonaco and WNP were represented by a <u>different</u> agent at the same large talent agency. This conclusory hypothesis is even further afield from the "bare corporate receipt" doctrine courts repeatedly have rejected.

Courts should not accept legal conclusions as "fact," even if they are cast in the form of factual allegations. See <u>Trinity Christian Center of Santa Ana, Inc. v. McVeigh</u>, 2013 WL 5935562, *5 (C.D. Cal. Oct. 31, 2013) ("[t]he court is not required to accept as true legal conclusions couched as factual allegations"); <u>Armeni v. America's Wholesale Lender</u>, 2012 WL 1570112, *1 (C.D. Cal. May 2, 2012) (same). This is especially true where, as here, the legal conclusion cannot be drawn from the facts alleged. See <u>Clegg v. Cult Awareness Network</u>, 18 F.3d 752, 755 (9th Cir. 1994) (plaintiff's conclusory reference to defendant as a place of public accommodation was insufficient where facts alleged failed to support conclusion).

There are no well-pleaded factual allegations in the SAC establishing <u>any</u>

contact or relationship between the two UTA agents who received Plaintiff's Screenplay, on the one hand, and DeMonaco or WNP, on the other hand. Nor are there any well-pleaded facts in the SAC plausibly alleging that DeMonaco's agent ever received the Screenplay, or that he gave it to DeMonaco. Plaintiff's daisy-chain of conclusory, speculative assertions should have been disregarded by the district court. Bolton, 212 F.3d at 482 ("[a]ccess may not be inferred through mere speculation or conjecture"); Gable, 727 F.Supp.2d at 826 (rejecting assertion that submission to one agent satisfied burden of proving access to another agent at the same agency).

The district court also disregarded case law rejecting the "bare corporate receipt" doctrine, on the grounds that many of the cases were decided on summary judgment. But the procedural posture of those cases was not dispositive; courts have decided the issue of "access" on early motions. See, e.g., Hill v. Gaylord Entm't, 2008 WL 783756, *2 (S.D. Fla. Mar. 20, 2008) (12(c) motion); Kenney v. Warner Bros. Entm't, Inc., 984 F.Supp.2d 9, 13 (D. Mass. 2013) (12(b)(6) motion). Moreover, although Gable was decided on summary judgment, that court rejected the plaintiff's theory of access "even generously assuming" the plaintiff could document his submission. 727 F.Supp.2d at 827. The district court should have

reached the same result here.[32]

The district court also cited the supposedly "relatively short" interval between Plaintiff's submission of the Screenplay to Kramer and Davis and the release of "The Purge." But <u>two</u> <u>years</u> elapsed between Plaintiff's alleged submission in July 2011, and the release of the Film in June 2013. E.R. 833-35. Neither Plaintiff nor the district court's order cited any authority holding that a plaintiff can plausibly allege access merely by pointing to the timeframe between the alleged submission of an idea and the publication of the defendant's work. Instead, courts have rejected an inference of access based on timeframes far shorter than the one here. <u>See</u>, <u>e.g.</u>, <u>Spinner</u>, 215 Cal.App.4th at 188-189 (rejecting

---

[32] The Ninth Circuit's decision in <u>Kamar International v. Russ Berrie & Co.</u>, 657 F.2d 1059 (9th Cir. 1981), on which Plaintiff heavily relied, does not support his "bare corporate access" theory. E.R. 849; <u>see also</u> E.R. 17. In <u>Kamar</u>, this Court found that a toy company sufficiently alleged access in a copyright lawsuit involving stuffed animals where both parties bought their toys from the same Korean manufacturers. 657 F.2d at 1062. Numerous cases from around the country have distinguished <u>Kamar</u> as involving much more than allegations of bare corporate access. <u>See</u>, <u>e.g.</u>, <u>Meta-Film</u>, 586 F.Supp. at 1358 (rejecting attempt to use <u>Kamar</u> to avoid the "corporate receipt doctrine"); <u>Herzog v. Castle Rock Entm't</u>, 193 F.3d 1241, 1251-1252 (11th Cir. 1999) (distinguishing <u>Kamar</u>); <u>Jones v. Blige</u>, 558 F.3d 485, 492-493 (6th Cir. 2009) (same; rejecting argument that receipt of plaintiff's CD by record company executive plausibly inferred receipt by recording artist for same company); <u>Ferguson v. NBC</u>, 584 F.2d 111, 113 (5th Cir. 1978) (rejecting argument that composer had access to composition because it was sent to BMI, even though composer had contacts with BMI). The overwhelming weight of authority rejects Plaintiff's theory that a submission to one person at a company taints everyone at that company – let alone every client of every person at that company.

argument that access could be inferred by short timeframe between defendant's creation of outline for television series and "overnight" decision to produce the pilot; even if timing was "unprecedented," that alone does not create reasonable inference of access).

Plaintiff's only other allegation concerning "access" – made in connection with his copyright claim – is even more attenuated. He asserts that a literary agent named Ken Levin received the Screenplay, and alleges that Levin must have transmitted it to two defendants (Platinum Dunes and Universal), based on some unidentified "preexisting working relationship" with these defendants at some unspecified point in time. (E.R. 836-37.) Even before Iqbal and Twombly, this kind of rank speculation would not suffice to meet a plaintiff's burden of establishing access. In light of the more stringent pleading standards established by those cases, this allegation should have been rejected out of hand.

Because Plaintiff failed to meet his burden of pleading facts sufficient to establish access to his Screenplay, his implied contract claim should be stricken.

## C. Plaintiff's "Implied Contract" Claim Independently Fails Because He Failed To Establish Contractual Privity.

The California Supreme Court has recognized that "ideas" are not property, and "become, after voluntary communication to others, free as the air to common use." Desny, 46 Cal.2d at 731-732. California law recognizes a limited exception to this general rule, if parties contract to pay for the disclosure of ideas, under

narrowly-conscribed circumstances.  Id.  The rationale for enforcing such agreements is that if a contracting party "commercially solicits" the disclosure of a "valuable idea," and "voluntarily accepts it knowing that it is tendered for a price," it is reasonable to enforce the contract that the receiving party made.  Id. at 734.

But that does not mean every disclosure of an idea creates an implied contract, or that a "contract" can be formed with parties that were never part of the agreed-upon bargain.  As the Desny Court observed, "[t]he law will not imply a promise to pay for an idea from the mere facts that the idea has been conveyed, is valuable, and has been used for profit; this is true even though the conveyance has been made with the hope or expectation that some obligation will ensue."  Id. at 739.  Instead, a "Desny" claim requires a clear and mutually understood expectation of payment for an idea before it is disclosed, or no liability can be imposed.  Thus, to state a claim for breach of implied-in-fact contract under California law, the plaintiff must allege specific facts from which the court can reasonably infer:  (1) the plaintiff clearly conditioned the submission of his idea to the defendant on the defendant's promise to pay for it if the defendant used it; (2) the defendant, knowing this condition before the plaintiff disclosed the idea, voluntarily accepted the submission of the idea; (3) the defendant actually used the idea – that is, the defendant based its work substantially on the plaintiff's idea, rather than on its own idea or ideas from other sources; and (4) the plaintiff

46

incurred damages. <u>Desny</u>, 46 Cal.2d at 738-739; <u>Spinner</u>, 215 Cal.App.4th at 184; <u>Mann</u>, 128 Cal.App.3d at 647 n.6; <u>Faris</u>, 97 Cal.App.3d at 318. Thus, "[o]ne party cannot, by unilateral words or deeds, thrust upon another a contractual relationship <u>unless</u> the latter has, <u>by his own words and deeds</u>, consented thereto." <u>Desny</u>, 46 Cal.2d at 730 (emphasis added).

Here, Plaintiff seeks to dramatically expand this limited fictional "contract" far beyond anything contemplated by <u>Desny</u> – where individuals who never "solicited" or "accepted" a disclosure (or even are alleged to have known about it), – are somehow contractually bound. No appellate court ever has adopted this expansive theory of "implied" contracts, nor should this Court do so.

## 1. Plaintiff Did Not Allege Privity With DeMonaco Or WNP.

"Privity between the parties is a necessary element of an implied-in-fact contract claim." <u>Benay v. Warner Bros. Entm't, Inc</u>., 607 F.3d 620, 634 (9th Cir. 2010). "[T]he creation of an implied-in-fact contract between an author, on the one hand, and an agent, producer, or director, on the other hand, is of such a personal nature that it is effective <u>only</u> between the contracting parties." <u>Rokos v. Peck</u>, 182 Cal.App.3d 604, 617 (1986) (emphasis added); <u>see</u> <u>also</u> <u>Chandler v. Roach</u>, 156 Cal.App.2d 435, 441 (1957) ("[u]nlike a copyright, a contract … is effective only between the contracting parties; it does not withdraw the idea from general circulation"). Thus, "a contract action will fail if the person to whom the

plaintiff submitted the idea was not authorized – actually or apparently – to enter into contracts on behalf of the defendant." 4 Melville B. Nimmer & David Nimmer, NIMMER ON COPYRIGHT § 19D.05[C] (Bender, 2011).

This limitation only makes sense: Desny requires the plaintiff to have "clearly conditioned" his submission to the defendant on a promise to pay – and requires that the defendant "voluntarily" accept the condition prior to the disclosure. Neither of these requirements conceivably can be met if there was never any contact between the plaintiff and defendant, and the person receiving the submission never was asked about the particular defendant, did not accept it on behalf of that defendant, or was not expressly authorized to accept it on behalf of that defendant.

Here, even though this is Plaintiff's third attempt to plead a claim, the SAC still fails to include any factual allegations showing privity between Plaintiff, on the one hand, and DeMonaco and/or WNP, on the other hand.

- It is undisputed that there was no direct contact between these parties.

-  Plaintiff has not alleged any facts showing that these defendants solicited submissions from Plaintiff, that Plaintiff sought to submit his Screenplay to these defendants, or that Kramer or Davis had authority to accept submissions on behalf of these defendants.

- The SAC does not even contain a single factual allegation showing

any mention whatsoever of DeMonaco or WNP in any

communications between or by Plaintiff, his manager, Kramer, and/or

Davis.

Instead, Plaintiff simply recites language from Desny, making the

conclusory assertion that DeMonaco and WNP "voluntarily accepted the disclosure

knowing they had an obligation to compensate and credit Plaintiff[,]" and "had

multiple opportunities to reject" the submission (E.R. 850) – even though it is not

alleged that they ever were aware of the submission. The ambiguous allegations in

the SAC make clear that Plaintiff's manager simply sent the Screenplay to Kramer

and Davis without any direction about what they should do with it, and certainly

without requesting that it be sent to these defendants. The notion that a contract

can somehow be formed under these circumstances is untenable. See, e.g.,

Donahue v. Ziv Television Programs, Inc., 245 Cal.App.2d 593, 607 (1966)

(rejecting idea submission claim because no contractual privity existed between

plaintiffs and defendant, where defendant was a former employee of an entity with

whom plaintiff alleged an implied contract; "[i]t was not [the defendant] who

before or at the time of the submission impliedly promised to pay and certainly he,

at no time, made any express promise").

Instead, Plaintiff again relies on his theory that the submission of his

Screenplay to any agent at UTA can be imputed to DeMonaco and WNP. Even if

this kind of attenuated connection sufficed to establish "access" – which, as discussed above, it does not – no court previously has held that such allegations are sufficient to form a binding contract.

The district court, in ruling on the Film Defendants' 12(b)(6) motion, relied on the submission to other agents at UTA, finding it sufficiently plausible that the "entity" somehow had authority to "bind DeMonaco" because he was represented by a different agent at the same talent agency. E.R. 14 (citing SAC ¶ 22, 31, 40). In doing so, the district court acknowledged that Plaintiff's allegations "are not detailed," but found the allegations sufficient to defeat a 12(b)(6) motion. E.R. 14. This ruling is clear error.

Plaintiff's allegation that receipt of the Screenplay by UTA can be imputed to DeMonaco relies on bare legal conclusions that should not have been credited by the district court. Iqbal, 556 U.S. at 681 (conclusory allegations are not entitled to the presumption of truth); Twombly, 550 U.S. at 545 (plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions). Moreover, the conclusion that receipt of a screenplay by a disembodied talent "agency" binds all of that agency's talent agents and all of those agents' clients to an implied-in-fact contract contravenes California law.

**2.**     **Allowing A Talent Agency's Receipt Of A Screenplay To Bind All Of The Agency's Clients To An Implied Contract Defies Well-Settled Agency Law.**

"To plead an agency relationship, a plaintiff must allege: (1) that the agent or apparent agent holds power to alter legal relations between the principal and third persons and between the principal and himself; (2) that the agent is a fiduciary with respect to matters within the scope of the agency; and (3) that the principal has right to control the conduct of the agent with respect to matters entrusted to him."  Buchanan v. Neighbors Van Lines, 2010 WL 4916644, *3 (C.D. Cal. Nov. 29, 2010) (internal marks omitted).

California recognizes two types of authority that permit an agent to bind a third party "principal" to a contract:  actual authority and ostensible authority.  Actual authority is that which "a principal intentionally confers upon the agent," or "by want of ordinary care, allows the agent to believe himself to possess."  Cal. Civ. Code § 2316.  Ostensible authority occurs when a principal "causes or allows a third person to believe the agent to possess" authority to bind the principal.  Cal. Civ. Code § 2317; see also U.S. Commodity Futures Trading Comm'n v. Paron Capital Mgmt., LLC, 2012 WL 1156396, *3 (N.D. Cal. Apr. 6, 2012).  For ostensible authority, "the representations of the purported agent are irrelevant; instead the relevant inquiry is whether … the principals, did anything that intentionally or negligently caused" the plaintiff to reasonably believe that the

agent was authorized.  Id. (emphasis added).

The SAC is devoid of any facts showing that Kramer or Davis had authority to bind these defendants.  Plaintiff does not allege that Kramer or Davis had actual authority to bind DeMonaco or WNP to any contractual obligations; instead, he asserts only that "DeMonaco is, and at all times was, represented by UTA." E.R. 835.  Even if the Court permitted Plaintiff's revisionist pleading[33] and accepted this generic allegation, it does not come close to meeting Plaintiff's burden.  Even if Plaintiff knew at the time of his submission that an agent at UTA represented DeMonaco and/or WNP (which he has not alleged), and even if he believed that there was some relationship between Kramer, Davis, and DeMonaco's agent (which he also did not allege), Plaintiff still could not plausibly allege a mutual understanding that Kramer or Davis had actual authority to bind DeMonaco or WNP to a contract.  "Persons dealing with an assumed agent are bound at their peril to ascertain the extent of the agent's authority."  van't Rood v. Count of Santa Clara, 113 Cal.App.4th 549, 573 (2003).

Nor has Plaintiff sufficiently pled the existence of ostensible authority.  Under California law, "[b]efore recovery can be had against the principal for the acts of an ostensible agent, three requirements must be met: The person dealing

---

[33] Plaintiff alleged previously that a different agent, Ferraro, represents DeMonaco.  E.R.  875.

with an agent must do so with a reasonable belief in the agent's authority, such belief must be generated by some act or neglect <u>by the principal</u> sought to be charged and the person relying on the agent's apparent authority must not be negligent in holding that belief." <u>J.L. v. Children's Inst., Inc.</u>, 177 Cal.App.4th 388, 403-04 (2009) (emphasis added). But the SAC does not contain <u>any</u> allegations that the purported principals – DeMonaco and WNP – gave Plaintiff or his manager any reason to believe that Kramer or Davis had authority to bind them, let alone that Plaintiff or his manager <u>relied</u> on such a belief. No such allegation could be made, because Plaintiff never had <u>any</u> contact with DeMonaco or WNP.

Instead, Plaintiff alleged only that his Screenplay "was received by DeMonaco's <u>agency</u>, which in the entertainment industry, is receipt by DeMonaco." E.R. 836 (emphasis added). But such bare, conclusory allegations are insufficient to allege agency as a matter of law. <u>See</u> <u>Buchanan</u>, 2010 WL 4916644, at *3 (generic allegations that defendants were all agents of each other "are nothing more than legal conclusions of the type prohibited by <u>Iqbal</u> and <u>Twombly</u>") (internal citations omitted); <u>Imageline, Inc. v. CafePress.com, Inc.</u>, 2011 WL 1322525, *4 (C.D. Cal. Apr. 6, 2011) (same). <u>See</u> <u>also</u> <u>Dillon v. NBCUniversal Media LLC</u>, 2013 WL 3581938 (C.D. Cal. June 18, 2013) (rejecting conclusory allegation that producer of an NBC program had "actual

or apparent authority" to act on behalf of network). The district court here did not address any of these authorities in its June 24 Order.

Allowing implied-in-fact contract claims to proceed, based on such thin allegations of supposed authority, would dramatically expand the law of implied-in-fact contracts, with absurd consequences. If any submission to any agent at a large, successful agency could bind <u>all of the clients</u> of all of the agents, would-be authors could force nearly <u>any</u> member of the entertainment industry into court to defend against meritless claims. As one court noted, "countless unsolicited scripts are submitted to numbers of individuals on studio lots every day." <u>Meta-Film</u>, 586 F. Supp. at 1357. By submitting a script to a variety of different talent agencies, an aspiring author could effectively "monopolize" the concepts in his or her screenplay, by imposing an entirely fictional "implied" contract on everyone associated with any agent at those agencies. Contract claims cannot be based on such attenuated grounds. Because no law supports Plaintiff's implied contract claim, it should be dismissed for this additional reason.

### 3. Plaintiff Failed To Adequately Allege Other Elements Required For An Implied-In-Fact Contract.

California law is clear that, to state a claim for breach of implied-in-fact contract, the plaintiff must allege <u>facts</u> from which the court can reasonably infer that: (1) the plaintiff <u>clearly conditioned</u> the submission of his idea to the defendant upon the defendant's promise to pay for it if the defendant used it; and

(2) the defendant, knowing this condition <u>before</u> the plaintiff disclosed the idea, voluntarily accepted the submission of the idea. <u>Desny</u>, 46 Cal.2d at 738-739. <u>See also</u> <u>Faris</u>, 97 Cal.App.3d at 318. "[N]o contract may be implied where an idea has been disclosed not to gain compensation for that idea but for the sole purpose of inducing the defendant to enter a future business relationship." <u>Aliotti v. R. Dakin & Co.</u>, 831 F.2d 898, 902 (9th Cir. 1987).

Here, in an earlier ruling dismissing Plaintiff's breach of implied contract claim, the district court highlighted these requirements, noting Plaintiff had "identified no allegations to show that UTA ever understood [Plaintiff's intent to be compensated], or agreed to that condition before receiving the idea." E.R. 866. As the court stated, "there needs to be more than a unilateral offer and Benel only offers argument as to his intent, not UTA's understanding or conduct." E.R. 866. Plaintiff failed to allege facts that "show that UTA voluntarily accepted the conveyance on the condition that it had an obligation to pay for it"; instead, "[t]he facts alleged by Benel would remove any requirement of assent or an agreement that is the heart of the claim he asserts." <u>Id.</u> at 5.

In the June 24 Order, however, the district court found that Plaintiff adequately addressed these deficiencies by adding entirely conclusory allegations in the SAC that there was "an understanding by both parties that the presentation of the [Screenplay] was conditioned on payment should it be used at a later point,"

and that there is a "custom and practice" in the industry of paying for submissions. E.R. 13.

But these allegations are <u>not</u> sufficient to satisfy the requirements set forth by the California Supreme Court in <u>Desny</u>. Even assuming, for sake of argument, that Plaintiff's manager asked for "permission to submit the Screenplay," as he now claims, obtaining such "permission" from a talent agency does not constitute an understanding or agreement as to <u>payment</u>, let alone an understanding or agreement by the recipient that he is effectively binding <u>every client of the entire agency</u>. The email correspondence attached to the SAC states only that the manager "look[ed] forward to hearing [Davis's] thoughts on the material." (E.R. 861).

Plaintiff's allegations echo those made in <u>Faris</u>. In that case, the plaintiff claimed that his "idea was to go to Mr. Enberg with this format in an attempt to go with me on it." 97 Cal.App.3d at 315-16. The court held that there was "no reason to think that Enberg, or anyone else with whom Enberg spoke, would have believed that Faris' submission was an offer to sell something, which if used would oblige the user to pay." <u>Id.</u> at 319. Similarly, although Plaintiff apparently hoped to enter into some kind of business relationship with UTA (E.R. 834), this hope

does not constitute a mutual agreement, as required for a <u>Desny</u> claim.  <u>See also</u>

<u>Aliotti</u>, 831 F.2d at 902.[34]

     Plaintiff's allegations are even more far afield than in <u>Faris</u>.  There are <u>no</u>

facts alleged that can support a conclusion that Plaintiff's manager, Kramer, and

Davis arrived at a clear and mutual understanding that Kramer and Davis were

accepting a submission <u>on behalf of all of UTA's clients</u>, such that Plaintiff would

be paid if <u>any</u> client of <u>any</u> agent at UTA ever used a similar idea.  Because

Plaintiff's allegations are woefully inadequate, despite three opportunities to plead

a claim, his implied contract claim should have been dismissed with prejudice.

**D.    The Film Defendants' SLAPP Motion Should Have Been Granted As To Plaintiff's Declaratory Relief Claim.**

     Plaintiff's SAC also asserted a claim for declaratory relief against all of the

Film Defendants.  The district court properly dismissed that claim, without leave to

amend, in ruling on the Film Defendants 12(f) Motion.  E.R. 25.[35]  The merits of

---

[34] In <u>Faris</u>, the plaintiff also argued that Enberg solicited the submission by returning his phone call.  The court disagreed, holding that "[i]t would be entirely inconsistent with <u>Desny</u> to hold that an implied-in-fact contract could be created because a telephone call was returned or because a request was made for an opportunity to read the work that was unconditionally submitted."  <u>Id.</u>  The same result is compelled here.  Even assuming that Plaintiff's manager obtained "permission" to send the Screenplay to a UTA agent, that does not demonstrate that it was solicited, let alone establish a mutual understanding about the consequence of the submission.

[35] Although Plaintiff moved for reconsideration of some aspects of the 12(f) ruling, he did not ask for this claim to be revived, or seek to certify an interlocutory

this ruling are not challengeable on this appeal.  Club Members For An Honest

Election v. Sierra Club, 45 Cal.4th 309, 320 (2008) (where trial court dismissed

claim on summary judgment that appellate court later determined was subject to

SLAPP statute, plaintiff "could not challenge the propriety" of ruling on merits of

that claim).

Because the district court erred in finding that the SLAPP statute did not

apply to this claim,[36] this Court's reversal of that ruling also should find that the

declaratory relief claim should have been stricken, and the Film Defendants should

be awarded their fees and costs incurred in defending against this meritless claim.

C.C.P. § 425.16(g).

## 9.
## CONCLUSION

Allowing Plaintiff to proceed with his implied contract and declaratory relief

claims, based on an expansive theory of "access" and "privity," would open the

floodgates for these kinds of attenuated claims.  Neither controlling law, nor

common sense, permit such a result.  Because the district court erred in refusing,

sua sponte, to apply the SLAPP statute to this case, and because Plaintiff failed to

meet his burden of establishing a probability of success on these claims, this Court

---

appeal.  E.R. 907-08.  Consequently, the merits of the claim are not before this
Court.

[36] See Section 7(B)(4).

should reverse the district court's order, grant the SLAPP motion in its entirety, and remand to the district court to determine the amount of fees to be awarded to the Film Defendants.

RESPECTFULLY SUBMITTED this 13th day of April, 2016.

DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER
KAREN A. HENRY
JASON S. HARROW


By _____*s/Kelli L. Sager*_____
          Kelli L. Sager

Attorneys for Defendants and Appellants
UNIVERSAL CITY STUDIOS LLC,
BLUMHOUSE PRODUCTIONS, LLC,
OVERLORD PRODUCTIONS, LLC,
PLATINUM DUNES PRODUCTIONS,
WHY NOT PRODUCTIONS, INC. and
JAMES DEMONACO

## <u>CERTIFICATE OF COMPLIANCE</u>

The foregoing brief complies with the requirements of Federal Rule of

Appellate Procedure 32(a)(7)(C) and Circuit Rule 32-1.  The brief is

proportionately spaced in Times New Roman 14-point type.  According to the

word processing system used to prepare the brief, the word count of the brief is

13,851 words, not including the corporate disclosure statement, table of contents,

table of authorities, certificate of service, and certificate of compliance.

DATED this 13th day of April, 2016.

DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER
KAREN A. HENRY
JASON HARROW


By_____*/s/ Karen A. Henry*_____
        Karen A. Henry

Attorneys for Defendants and Appellants
UNIVERSAL CITY STUDIOS LLC,
BLUMHOUSE PRODUCTIONS, LLC,
OVERLORD PRODUCTIONS, LLC,
PLATINUM DUNES PRODUCTIONS,
WHY NOT PRODUCTIONS, INC. and
JAMES DEMONACO

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Circuit Rule 28-2.6, Appellants-Defendants Universal City Studios LLC, Blumhouse Productions, LLC, Overlord Productions, LLC, Platinum Dunes Productions, Why Not Productions, Inc., and James DeMonaco are unaware of any related cases currently pending in this Court.

DATED this 13th day of April, 2016.

DAVIS WRIGHT TREMAINE LLP
KELLI L. SAGER
KAREN A. HENRY
JASON S. HARROW


By _____ *s/ Kelli L. Sager* _____
                Kelli L. Sager

Attorneys for Defendants and Appellants
UNIVERSAL CITY STUDIOS LLC,
BLUMHOUSE PRODUCTIONS, LLC,
OVERLORD PRODUCTIONS, LLC,
PLATINUM DUNES PRODUCTIONS,
WHY NOT PRODUCTIONS, INC. and
JAMES DEMONACO

9th Circuit Case Number: 1156325

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 13, 2016.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

     /s/ Yvette Merino

**ADDENDUM OF PERTINENT CONSTITUTIONAL
PROVISIONS AND STATUTES**

# TABLE OF CONTENTS

**Page(s)**

I.    FIRST AMENDMENT TO THE UNITED STATES
      CONSTITUTION ................................................................1

II.   CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16 ...........1

III.  CALIFORNIA CIVIL CODE SECTION 2316 .............................................5

IV.   CALIFORNIA CIVIL CODE SECTION 2317 .............................................5

## I. FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.

## II. CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16

(a) The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly.

(b) (1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

1

(2)  In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

(3)  If the court determines that the plaintiff has established a probability that he or she will prevail on the claim, neither that determination nor the fact of that determination shall be admissible in evidence at any later stage of the case, or in any subsequent action, and no burden of proof or degree of proof otherwise applicable shall be affected by that determination in any later stage of the case or in any subsequent proceeding.

(c)  (1)  Except as provided in paragraph (2), in any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs.  If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5.

(2)  A defendant who prevails on a special motion to strike in an action subject to paragraph (1) shall not be entitled to attorney's fees and costs if that cause of action is brought pursuant to Section 6259, 11130, 11130.3, 54960, or 54960.1 of the Government Code.  Nothing in this paragraph shall be construed to prevent a prevailing defendant from recovering attorney's fees and costs pursuant

2

to subdivision (d) of Section 6259, or Section 11130.5 or 54690.5, of the Government Code.

(d)  This section shall not apply to any enforcement action brought in the name of the people of the State of California by the Attorney General, district attorney, or city attorney, acting as a public prosecutor.

(e)  As used in this section, "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes:  (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

(f)  The special motion may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper.  The motion shall be scheduled by the clerk of the court for a hearing not

more than 30 days after the service of the motion unless the docket conditions of the court require a later hearing.

(g)  All discovery proceedings in the action shall be stayed upon the filing of a notice of motion made pursuant to this section.  The stay of discovery shall remain in effect until notice of entry of the order ruling on the motion.  The court, on noticed motion and for good cause shown, may order that specified discovery be conducted notwithstanding this subdivision.

(h)  For purposes of this section, "complaint" includes "cross-complaint" and "petition," "plaintiff" includes "cross-complainant" and "petitioner," and "defendant" includes "cross-defendant" and "respondent."

(i)  An order granting or denying a special motion to strike shall be appealable under Section 904.1.

(j)  (1)  Any party who files a special motion to strike pursuant to this section, and any party who files an opposition to a special motion to strike, shall, promptly upon so filing, transmit to the Judicial Council, by e-mail or facsimile, a copy of the endorsed, filed caption page of the motion or opposition, a copy of any related notice of appeal or petition for a writ, and a conformed copy of any order issued pursuant to this section, including any order granting or denying a special motion to strike, discovery, or fees.

4

(2)  The Judicial Council shall maintain a public record of information transmitted pursuant to this subdivision for at least three years, and may store the information on microfilm or other appropriate electronic media.

## III.   CALIFORNIA CIVIL CODE SECTION 2316

Actual Authority Defined.

ACTUAL AUTHORITY, WHAT. Actual authority is such as a principal intentionally confers upon the agent, or intentionally, or by want of ordinary care, allows the agent to believe himself to possess.

## IV.   CALIFORNIA CIVIL CODE SECTION 2317

Ostensible Authority Defined.

OSTENSIBLE AUTHORITY, WHAT. Ostensible authority is such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess.

DWT 29010376v1 0020040-000121

9th Circuit Case Number: 1156325

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on April 13, 2016.


I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.




/s/ Yvette Merino